**EICHENBERGER, Appellee,**

**v.**

**EICHENBERGER, Appellant.**

[Cite as *Eichenberger v. Eichenberger* (1992), 82 Ohio App.3d 809.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–218.

Decided Sept. 29, 1992.

810

*Melissa R. Lipchak,* for appellee.

*Raymond L. Eichenberger, pro se.*

TYACK, Judge.

On January 23, 1992, Diane W. Eichenberger filed an action against her husband, Raymond L. Eichenberger, in which she sought a civil protection order and other relief pursuant to R.C. 3113.31. An immediate hearing was conducted and a temporary civil protection order was issued. The matter was then set for a full contested hearing one week later, on January 30, 1992.

The final hearing commenced on January 30 but was not able to be concluded. The trial court issued a new temporary civil protection order and set the balance of the hearing for February 6, 1992. Scheduling conflicts caused the action to be set over an additional week. The trial court ultimately concluded the hearing and issued a final civil protection order against Mr. Eichenberger.

Mr. Eichenberger, appellant, has timely appealed, assigning seven errors for our consideration:

"I. The trial court erred as a matter of law by permitting the appellee to invoke privilege pursuant to O.R.C. 2317.02 so as to prevent marriage counselor Edward Wojniak from testifying on his behalf at trial concerning the mental state of the appellee.

"II. The trial court erred as a matter of law by failing to use the evidentiary standard of clear and convincing evidence in ruling in favor of the petitioner and in granting the petitioner the permanent civil protection order.

"III. The trial court erred as a matter of law in finding that the respondent placed petitioner in fear of imminent serious physical harm by adoption of a subjective test according to the claimed state of mind of the petitioner.

"IV. The trial court erred as a matter of law in granting petitioner a civil protection order due to the fact that the ruling was against the manifest weight of the evidence as to imminent fear of serious physical harm.

"V. The trial court erred as a matter of law by considering evidence of a date and time which should have been precluded due to the existence of a judgment entry and subsequent dismissal from a prior case.

"VI. The trial court erred as a matter of law by failing to rule upon the permanent civil protection order within seven days of the temporary civil protection order and in continuing the hearing date twice.

"VII. The trial court erred as a matter of law in entering the temporary civil protection order on January 23, 1992; said order was not sufficiently demonstrative that the appellee was in fear of imminent, serious physical harm."

Additional pertinent facts are set forth under the applicable assignment of error.

The first assignment of error addresses the trial court's ruling on whether a licensed social worker who had provided marriage counseling for the parties could be compelled to testify about communications and testing that occurred during the counseling process. Edward Wojniak, the counselor, refused to testify about what could be construed as privileged communications unless both parties expressly waived privilege. Appellant waived the privilege, but Ms. Eichenberger refused to do so.

The trial court reviewed R.C. 2317.02, "Privileged communications and acts," which reads, in pertinent part:

"The following persons shall not testify in certain respects:

" * * *

"(G)(1) A school guidance counselor who holds a valid teacher's certificate from the state board of education as provided for in section 3319.22 of the Revised Code or a person licensed or registered under Chapter 4757. of the Revised Code and rules adopted under it as a professional counselor, counselor assistant, social worker, social worker assistant, or independent social worker concerning a confidential communication made to him by his client in that relation or his advice to his client unless any of the following applies:

"(a) The communication or advice indicates clear and present danger to the client or other persons. For the purposes of this division, cases in which there

are indications of present or past child abuse or neglect of the client constitute a clear and present danger.

"(b) The client gives express consent to the testimony.

"(c) If the client is deceased, the surviving spouse or the executor or administrator of the estate of the deceased client gives express consent.

"(d) The client voluntarily testifies, in which case the school guidance counselor or person licensed or registered under Chapter 4757. of the Revised Code and rules adopted under it may be compelled to testify on the same subject.

"(e) The court in camera determines that the information communicated by the client is not germane to the counselor-client or social worker-client relationship.

"(f) A court, in an action brought against a school, its administration, or any of its personnel by the client, rules after an in-camera inspection that the testimony of the school guidance counselor is relevant to that action."

The trial court was not provided definitive guidance by way of case law, so it honored Mr. Wojniak's refusal to testify about arguably privileged communications. Appellant then proffered what he understood to be the essence of Mr. Wojniak's potential testimony as follows:

"[APPELLANT]: Had the Court not sustained the objections of Counsel concerning the privileged testimony of Mr. Wojniak the questions to be asked him would have concerned what the scope of testimony—excuse me, strike that—what the terms and what the subject matter spoken about in counselling would have been throughout approximately 15 or 20 counselling sessions between Mrs. Eichenberger, myself, and Mr. Wojniak.

"This testimony, and the answers that would have been offered by the witness, would have explained that the threats of violence, fear of physical violence by my wife from me were either a very minor part of those counselling sessions with the witness, that the topic was either very rarely discussed or not discussed at all. And that those particular concerns were not something that these counselling sessions dealt with to a great extent. And they were something that were not dealt with by the counselling sessions at all."

A major purpose of the testimony was apparently to dispute Ms. Eichenberger's testimony that she was in imminent fear of serious physical harm as a result of threats uttered by appellant. The proffer itself reveals that threats of violence were uttered and discussion of them was a part of the counseling sessions. Since the counseling stopped approximately two months before the court filing, obviously Mr. Wojniak could provide little insight as to the most

recent occurrences between the parties and could neither affirm nor dispute Ms. Eichenberger's assertions that the threats had increased markedly after the counseling process had stopped.

Under the circumstances, we cannot state that the trial court's refusal to compel Mr. Wojniak's testimony constituted *prejudicial* error. However, since this sort of problem is bound to recur, we feel compelled to address, in part, the question of whether the trial court committed error at all.

Although privilege has been consistently held to be in the possession of the individual seeking professional advice, psychologists, psychiatrists and a variety of other counselors have independent obligations to maintain certain confidences as a result of both state and federal laws, rules and regulations. However, pursuant to R.C. 2317.02(G)(1)(d) set forth above, Mr. Wojniak could have been compelled to testify and would have been protected for purposes of state law since Ms. Eichenberger testified at length about the counseling process and even about advice she claimed to have received during the course of it.

The record before us does not provide any insight as to what federal confidentiality problems Mr. Wojniak felt were presented, so we are not in a position to provide even an advisory opinion on that subject. We can only indicate that the trial courts should seriously consider the good faith assertions of mental health professionals and other counselors on the subject of their obligations to maintain confidentiality.

The first assignment of error is overruled due to the lack of demonstrated prejudice.

The second assignment of error suggests that the trial court erred in failing to require clear and convincing proof of domestic violence. No party requested findings of fact or conclusions of law, so the record is silent as to what standard of proof the trial court employed. Therefore, we cannot say that an incorrect standard was utilized. No error having been demonstrated, the second assignment of error is overruled.

The third assignment of error attacks the criteria used by the trial court in determining if domestic violence had occurred. "Domestic violence," for purposes of this action, is defined by R.C. 3113.31(A)(1) as follows:

" 'Domestic violence' means the occurrence of one or more of the following acts against a family or household member:

"(a) Attempting to cause or recklessly causing bodily injury;

"(b) Placing another person by the threat of force in fear of imminent serious physical harm;

"(c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code."

Since the record reflects no events in which appellant either injured or attempted to injure his wife, the sole theory at trial was that threats of force had placed his wife in fear of imminent serious physical harm. "Serious physical harm to persons" is defined in R.C. 2901.01(E) as follows:

" 'Serious physical harm to persons' means any of the following:

"(1) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

"(2) Any physical harm which carries a substantial risk of death;

"(3) Any physical harm which involves some permanent incapacity, whether partial or total, or which involves some temporary, substantial incapacity;

"(4) Any physical harm which involves some permanent disfigurement, or which involves some temporary, serious disfigurement;

"(5) Any physical harm which involves acute pain of such duration as to result in substantial suffering, or which involves any degree of prolonged or intractable pain."

 Given Ms. Eichenberger's testimony that appellant had threatened to kill her and that she was afraid that he would now follow up on that threat, sufficient testimony was present before the trial court to support the conclusion that domestic violence had occurred. As an appellate court, we are not in a position to view the demeanor of the witnesses and assess credibility in the way that a trial court can. Therefore, we are bound to accept the trial court's findings.

Fear always has a subjective element to it, but here the trial court expressly indicated that Ms. Eichenberger's fear was reasonable. Thus, we are not met with a situation where the fear is found to be utterly irrational, despite appellant's understandable view that the fear was irrational in light of his lack of acts causing physical harm in the past.

The third assignment of error is overruled.

 The fourth assignment of error is closely related to the third. In assessing whether a judgment is against the manifest weight of the evidence, we are guided by the Supreme Court of Ohio's ruling in *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *Id.* at syllabus.

The testimony of Ms. Eichenberger as to threats from appellant constitute some competent, credible evidence. Specifically, she testified:

" * * * You have grabbed my arm, and you have threatened to kill me. That you would do away with me. That you would silence me. Those were your words. I remember that vividly. * * * "

Therefore, the fourth assignment of error is overruled.

■ The fifth assignment of error suggests that the trial court erred by allowing testimony about events that had occurred and were the subject of a previous filing for a civil protection order. This assignment of error is also overruled. The prior filing did not lead to a journalized finding that appellant either did or did not engage in conduct which would warrant a final civil protection order. Thus, the doctrine of *res judicata* does not apply.

Further, Ms. Eichenberger's state of mind could very well have been the product, in part at least, of her past interactions with appellant. The fear she claimed to have felt and the reasonableness of that fear could and should be determined with reference to her history with appellant.

■ The sixth assignment of error attacks the trial court's failure to journalize a final civil protection order within seven days of the initial temporary order and in allowing continuances of the hearing. This assignment of error is also without merit. Given the present docket responsibilities of trial judges in a major metropolitan area, continuances for reasonable, limited periods of time are necessary. The trial court did, in fact, conduct extended proceedings on the seventh day after the action was filed but was unable to complete the hearing. Because of the serious ramifications of civil protection orders, hearings to determine the validity of the temporary orders should be given priority. Systematic failure to provide prompt review of the initial *ex parte* order could raise serious constitutional due process problems for R.C. 3113.31. However, the limited delays which occurred here did not jeopardize the integrity or constitutionality of the proceedings, nor did the delays constitute prejudicial error.

The sixth assignment of error is overruled.

■ The final assignment of error is also overruled. The trial court issued the temporary civil protection order based upon in-court testimony and an affidavit that included the following allegations:

"5. [Appellant] has used extreme offensive language and threatening verbal abuse with cursing has taken place on 11/29/91, 12/26/91, 1/1/92, 1/4/92, 1/11/92, 1/18/92[,] 1/19/92 and 1/20/92. This has repeatedly taken place in front of [appellant's] twelve-year-old minor son, Kyle Eichenberger,

as well as in front of the parties' minor four-year-old daughter, Stephanie Eichenberger.

" * * *

"13. The [appellant] attempted to cause serious bodily injury to the [appellee] on the 16th day of May, 1991, by threatening to smash [appellee's] head against the wall, and threatening to take [appellee's] clothing and belongings and lock her out of the house.

"14. [Appellant] has placed [appellee] in fear of imminent serious physical harm by said menacing threats, resulting in irreparable harm and injury.

"15. [Appellant] has previously engaged in domestic violence against [appellee], has threatened to kill her, has caused bodily harm, and has menaced her. [Appellant] has also threatened to take the minor child and run.

"16. [Appellee] is in immediate and present danger of domestic violence from the [appellant], and the relief requested is necessary to protect [appellee]. * * * "

Given these allegations, a temporary civil protection order was clearly appropriate.

All assignments of error having been overruled, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is affirmed.

*Judgment affirmed.*

PEGGY BRYANT, J., concurs.

WHITESIDE, J., dissents.

WHITESIDE, Judge, dissenting.

Being unable to concur in the majority opinion, I must respectfully dissent.

There is no question that the evidence in the record demonstrates that defendant engaged in improper and reprehensible conduct. However, the standard for the granting of a civil protection order does not depend upon improper and reprehensible conduct no matter how crude, offensive, or vulgar it may be. Nor does it even depend upon the fear of physical harm. Rather, domestic violence is defined in R.C. 3113.31, to include the following: "Attempting to cause or recklessly causing bodily injury," or "[p]lacing another person by the threat of force in fear of imminent serious physical harm." There is no contention here that actual bodily injury was either attempted or recklessly caused. Instead, the gravamen of the complaint is a threat of imminent serious physical harm by force.

Even assuming that the evidence presented could demonstrate a fear of physical harm, it does not permit a finding of a threat of imminent serious physical harm. As set forth in the majority opinion, R.C. 2901.01(E) defines serious physical harm. There is no contention here that mental illness is involved. Thus, the standards would be as set forth in R.C. 2901.01(E): physical harm carrying a substantial risk of death; permanent incapacity or temporary substantial incapacity; permanent disfigurement, or temporary, serious disfigurement; or acute pain as to result in substantial suffering or any degree of prolonged or intractable pain.

In other words, more than a demonstration of a fear of physical harm must be present. "Physical harm" is defined by R.C. 2901.01(C) to mean "any injury, illness or other physiological impairment, regardless of its gravity or duration."

The language set forth in the majority opinion does correctly demonstrate a threat; however, the witness did not testify that her arm was injured when it was grabbed, and the quoted answer was in response to a question whether actual bodily injury was caused. The witness did, however, state that she was in pain from rheumatoid arthritis. The witness indicated that her main concern with respect to not consulting further with a counselor was:

"And I conveyed to him that I did not believe that any progress had been made. That you were going back into your old patterns of behavior. The things were occurring that we were told not to allow to occur, which was your shouting and verbal abuse and your language in front of the children."

It is clear from the testimony of the plaintiff that her complaint concerns verbal abuse and vulgar and reprehensible conduct. She did state:

"I have been so overwhelmed at the fear. This time he might really act on his threats, because he threatened so many, many times. And I just know that every time it gets worse. That this time I had to get myself out of the position of maybe being a victim for real."

Even assuming that the evidence might be sufficient to permit a finding by a preponderance of the evidence, it does not permit the requisite finding by clear and convincing evidence. For these reasons, the second, third, and fourth assignments of error should be sustained.