JOURNAL ENTRY AND OPINION
Defendant-appellant Claude White appeals from a domestic violence civil protection order. He contends that the court below erred when it found that he committed an act of domestic violence against his minor daughter. We find his assignments of error to be without merit, so we affirm.
Plaintiff-appellee Jessica Reynolds commenced this proceeding on March 18, 1998 by filing a petition for a domestic violence civil protection order pursuant to R.C. 3113.31. The Cuyahoga County Common Pleas Court, Domestic Relations Division, issued anex parte civil protection order that day and temporarily transferred parental rights and responsibilities over Valerie White from Claude White to Jessica Reynolds. The matter was scheduled for a full hearing, which went forward on April 15, 1998.
The record discloses that White and Reynolds were married on or about March 12, 1988 and were divorced in Cuyahoga County on or about January 26, 1990. A daughter, Valerie, was born on August 6, 1988. For the three years preceding the events that resulted in this proceeding, Valerie lived with White in Elyria, Ohio.
The incident at issue occurred on either Wednesday, March 11, 1998 or Thursday, March 12, 1998.[1] Valerie testified that her father became angry with her when he saw some breakfast cereal behind Valerie's bed that her pet ferret had left there. (Tr. 123-124; 151.) White set her down on her bed and "popped," that is, spanked, her several times on her buttocks with his hand. (Tr. 122, 124-126.) Valerie sustained bruising and later showed her injuries to White. (Tr. 152-153.) White apologized to Valerie the day after the spanking. (Tr. 152, 155.)
White told Valerie that she should not tell or show anyone what he had done to her because they would think that he abused her. (Tr. 126; 145.) "He said not to tell — not to show my mom or anybody or tell anybody about it because then if I told somebody then he would — then he would hit me a little bit more." (Tr. 153.) White told Valerie that he would hit her again if her closet was not cleaned before she left for her scheduled weekend visit with her mother on Friday, March 13, 1998. (Tr. 127, 153.)
Valerie further testified that White had spanked her previously but never as hard as on this occasion. (Tr. 141.) Valerie said she was afraid that her father might hit her again:
Q. Okay. Why do you believe he will hit you more?
A. Because I disobeyed him.
Q. What do you mean, you disobeyed him?
 A. He told me not to tell anybody and I told somebody. (Tr. 133.)
Jessica Reynolds, Valerie's mother and the petitioner herein, testified that she first learned of the incident at or about 6:00 p.m. on Friday, March 13, 1998. (Tr. 22.) Reynolds testified that within thirty minutes after Valerie's arrival for a scheduled weekend visit, Valerie told Reynolds that White had hit her and caused bruises to her buttocks. (Tr. 8-9.) Valerie showed the bruises to Reynolds and said her dad told her that she was "going to get it twice as bad" if she told anybody. (Tr. 9, 17.) Reynolds worked her regular shift at the United States Post Office from 11:00 p.m. to 7:30 a.m. on March 14, 1998, and thereafter contacted the Parma police because that was where she lived. The Parma police referred Reynolds to the Elyria police where the incident occurred. (Tr. 10.) On the way to see the Elyria police, Reynolds and Valerie stopped at a medical clinic, which declined to provide treatment in a case of suspected child abuse. (Tr. 10.)
For his part, White admitted that he spanked Valerie seven times on her buttocks with his hand. (Tr. 64, 66, 193.) He conceded that this was "[a] punishment too severe," but disputed that it was a "beating." (Tr. 69.) White said he spanked Valerie for lying to him when she told him that she had completed her homework for school and her chores at home and because she had violated a rule prohibiting cereal in her room. (Tr. 65-66, 189-191.) When Valerie told White the following day that she had bruises, White looked at her buttocks and saw red marks. (Tr. 69-70, 188, 195-196.) White testified that he cried and told Valerie that he did not mean to do that. (Tr. 70, 196-197.) White admitted that he told Valerie not to tell her mother about the incident: "I told her not to show her mother or her mother would think that I beat her all the time." (Tr. 67, 197.) White testified that he had spanked Valerie on about four prior occasions, but acknowledged that this spanking was the most severe. (Tr. 63, 181.) White also offered the testimony of an intake officer for Lorain County Children's Services who investigated the abuse allegations but declined to take further action because she could not substantiate that the discipline administered, though excessive, was part of a pattern of abuse. (Tr. 103, 110-112.)
At the conclusion of the full hearing, the court found that there was a "reasonable basis" to continue the temporary protection order.[2] White appeals from that ruling and presents two assignments of error:
 I. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT ENGAGED IN DOMESTIC VIOLENCE AGAINST HIS MINOR DAUGHTER, VALERIE WHITE, AS DEFINED IN O.R.C. SECTION 3113.31(A) WHERE THE MANIFEST WEIGHT OF THE TESTIMONY AND EVIDENCE WAS TO THE CONTRARY.
 II. THE TRIAL COURT ERRED IN USING ITS OWN PERSONAL OPINION AND PHILOSOPHY REGARDING CORPORAL PUNISHMENT AS A BASIS FOR FINDING THAT APPELLANT HAD VIOLATED O.R.C. SECTION 3113.31
WHEN THE PREPONDERANCE OF THE EVIDENCE ESTABLISHED THAT APPELLANT HAD SIMPLY EXERCISED HIS RIGHT AS A PARENT TO USE CORPORAL PUNISHMENT AS A FORM OF DISCIPLINE.
Because the assignments of error are related, we will address them jointly. We find that they are not well taken.
Protection orders issued under R.C. 3113.31 are an "appropriate and efficacious method to prevent future domestic violence * * *."Felton v. Felton (1997), 79 Ohio St.3d 34, 41. Because the domestic violence statutes assign to the courts the responsibility for issuing protection orders, "the courts have an obligation to carry out the legislative goals to protect the victims of domestic violence." Felton, 79 Ohio St.3d at 44-45. The Felton court observed:
 The General Assembly enacted the domestic violence statutes specifically to criminalize those activities commonly known as domestic violence and to authorize a court to issue protection orders designed to ensure the safety and protection of a complainant in a domestic violence case. Accordingly, R.C. 3113.31 authorizes a court in an ex parte hearing to issue a temporary protection order when the court finds there to be an "[i]mmediate and present danger of domestic violence to the family or household member." R.C. 3113.31(D). Subsequent to this, the court proceeds as in a normal civil action and grants a full hearing. R.C. 3113.31(D). After such hearing, the court may issue a protection order that may direct the respondent to refrain from abusing the family or household members, grant possession of the household to the petitioner to the exclusion of the respondent, temporarily allocate parental rights and responsibilities and visitation rights, require the respondent to maintain support, require all parties to seek counseling, require the respondent to refrain from entering the residence, school, business, or place of employment of the petitioner, and grant any other relief that the court considers equitable and fair. R.C. 3113.31(E)(1).
Felton, 79 Ohio St.3d at 37-38 (citations and footnote omitted) When granting a protection order, the trial court must find that the petitioner has shown by a preponderance of the evidence that the petitioner or the petitioner's family or household members are in danger of domestic violence. Felton, syllabus at paragraph 2.
Because the standard for reviewing such orders has not been authoritatively articulated, there has been some noted inconsistency among the appellate courts. See O'Hara v. Dials
(Feb. 2, 1996), Erie App. No. E-95-044, unreported; Snyder v.Snyder (Aug. 15, 1995), Ross App. No. 94 CA 2068, unreported (Stephenson, J., concurring)
Some courts have reviewed these orders only for abuse of discretion. See, e.g., Strong v. Bauman (May 21, 1999), Montgomery App. Nos. 17256, 17414, unreported; Woolum v. Woolum
(Feb. 1, 1999), Preble App. No. CA 98-07-010, unreported; Moman v.Smith (Oct. 14, 1996), Clermont App. No. CA 96-05-047, unreported;O'Hara v. Dials, supra; Beach v. Beach (Oct. 27, 1992), Franklin App. No. 92AP-321, unreported; Deacon v. Landers (1990), 68 Ohio App.3d 26;Thomas v. Thomas (1988), 44 Ohio App.3d 6. Cf. Halleyv. Ashley (Nov. 12, 1997), Summit App. No. 18232, unreported (magistrate's decision reviewed for abuse of discretion).
Other courts have considered whether the judgment was supported by competent credible evidence going to all the essential elements. See, e.g., Still v. Still (Apr. 23, 1999), Montgomery App. No. 17416, unreported; Kiedrowicz v. Kiedrowicz (Apr. 9, 1999), Huron App. No. H-98-049, unreported; Conkle v. Wolfe (Nov. 18, 1998), Athens App. No. 98CA2, unreported; Sroka v. Sroka
(1997), 121 Ohio App.3d 728; Snyder v. Snyder, supra;Eichenberger v. Eichenberger (1992), 82 Ohio App.3d 809.
Still other courts have applied some combination of the two. See, e.g., Trent v. Trent (May 10, 1999), Preble App. No. CA 98-09-014, unreported; Sitton v. Sitton (Feb. 5, 1999), Montgomery App. No. 17262, unreported; Siouffi v. Siouffi (Dec. 18, 1998), Montgomery App. No. 17113, unreported; Tischler v.Vahcic (Nov. 16, 1995), Cuyahoga App. No. 68053, unreported; Westv. West (Dec. 7, 1994), Montgomery App. No. 14600, unreported;Stanzak v. Stanzak (Sept. 10, 1990), Butler App. No. CA 89-09-124, unreported.
We think our standard of review must depend on the nature of the challenge to the protection order. Because R.C. 3113.31
expressly authorizes the courts to craft protection orders that are tailored to the particular circumstances, it follows that the trial court has discretion in establishing the scope of a protection order and that judgment ought not be disturbed absent an abuse of discretion. When the issue is whether a protection order should have issued at all, however, the resolution of that question depends on whether the petitioner has shown by a preponderance of the evidence that the petitioner or the petitioner's family or household member was in danger of domestic violence. Felton, supra, syllabus at paragraph 2. The Felton
court held that there was "sufficient, credible evidence to prove by a preponderance of the evidence that appellee had engaged in acts of domestic violence," 79 Ohio St.3d at 44, without expressing any view as to whether the lower court abused its discretion. It is reasonable to infer from Felton that when a respondent contends that it was error to issue a protection order, the question on review is whether there was sufficient credible evidence to support a finding that the respondent had engaged in acts or threats of domestic violence. See Felton,79 Ohio St. 3d at 43-44; Sroka v. Sroka, supra,121 Ohio App.3d at 730.
Resolving that issue here requires us to decide whether there was sufficient credible evidence to support the finding that White had engaged in acts or threats of domestic violence. R.C.3113.31(A)(1) defines "domestic violence" as
 the occurrence of one or more of the following acts against a family or household member:
 (a) Attempting to cause or recklessly causing bodily injury;
 (b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;
 (c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code.
The trial court's judgment entry did not identify the precise ground upon which it determined that White had engaged in acts or threats of domestic violence. Our own review of the record causes us to conclude that there was sufficient credible evidence upon which the trial court could reasonably find that White's conduct toward Valerie constituted "domestic violence" within the meaning of R.C. 3113.31(A)(1)(a) and/or R.C. 3113.31(A)(1)(b)
White's conduct clearly caused bodily injury to Valerie. The testimony and photographs presented bear this out. White admitted that he saw red marks on Valerie's buttocks a day later and acknowledged that his conduct was excessive. His instruction to Valerie that she should not tell anyone about her injury reflects a conscious awareness that he acted in disregard of the risk that his conduct would result in bodily injury. We believe this evidence would be sufficient to permit the court to find that White recklessly caused bodily injury to Valerie under R.C.3113.31(A)(1)(a). See Felton v. Felton, supra; Sroka v. Sroka,supra.
The court could also find from Valerie's testimony that White placed her by the threat of force in fear of imminent serious physical harm within the meaning of R.C. 3113.31(A)(1)(b).[3]
A victim's history with the perpetrator may cause the victim to experience reasonable fear of the perpetrator's threats of domestic violence. See Eichenberger v. Eichenberger, supra,82 Ohio App. 3d at 815-816. Valerie testified that White threatened to hit her again if she reported this incident to anyone or if she did not clean her room. Valerie told Reynolds that White said she was "going to get it twice as bad" if she told anyone. The court could find from the testimony that White's threats placed Valerie in reasonable fear of domestic violence.
We are inclined to agree with White that the evidence would not support a finding under R.C. 3113.31(A)(1)(c) that White's conduct caused Valerie to be an "abused child." R.C. 2151.031
defines an "abused child" to include any child who
* * *
 (B) Is endangered as defined in section 2919.22 of the Revised Code, except that the court need not find that any person has been convicted under that section in order to find that the child is an abused child;
 (C) Exhibits evidence of any physical or mental injury * * * inflicted other than by accidental means * * *. Except as provided in division (D) of this section, a child exhibiting evidence of corporal punishment or other physical disciplinary measure by a parent, guardian, custodian, person having custody or control, or person in loco parentis of a child is not an abused child under this division if the measure is not prohibited under Section 2919.22 of the Revised Code.
 (D) Because of the acts of his parents, guardian, or custodian, suffers physical or mental injury that harms or threatens to harm the child's health or welfare.
* * *.
R.C. 2919.22(B) forbids among other things any person from
 [a]dminister[ing] corporal punishment or other physical disciplinary measure, or physically restrain[ing] the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child * * *.
We do not think that the evidence in this case would be sufficient to permit a finding that Valerie was an "abused child" under R.C. 2151.031, because it does not appear that White's disciplining of Valerie created "a substantial risk of serious physical harm" so as to violate R.C. 2919.22(B). But while the evidence was not sufficient to establish that Valerie was an "abused child" in order to find "domestic violence" under R.C.3113.31(A)(1)(c), the evidence was sufficient to permit a finding that White recklessly caused bodily injury under R.C.3113.31(A)(1)(a) and/or placed Valerie in reasonable fear of imminent serious physical harm under R.C. 3113.31(A)(1)(b), either one of which provides independent grounds to affirm the judgment.[4]
White takes issue with a comment made by the trial court after it found a reasonable basis to continue the protective order. The court observed:
 I am convinced that the Respondent [White] is remorseful as to what happened.
 It is quite apparent that there was a loss of temper here that requires the continuation of some counseling, so that this can be dealt with, and there is no question that under the circumstances never should a hand be laid on a child, never by anybody.
 Well, there are other ways of dealing with problems of lying or not doing what the child is supposed to do, and these are the things that counseling will be able to shed some light upon.
(Tr. 210.)
White contends that the court's comments suggest a hostility to corporal punishment in general and that the court wrongly imposed its own personal philosophy so that what White considered reasonable corporal punishment to discipline his daughter was considered by the court to be domestic violence. We acknowledge that while reasonable people may disagree as to the value and use of corporal punishment, Ohio law does not forbid such conduct so long as it does not transcend R.C. 2151.031 or R.C. 2919.22. But while. we have said that we do not think White's conduct, if considered as a form of corporal punishment, constituted domestic violence under R.C. 3113.31(A)(1)(c), we remain of the view that the evidence was sufficient to permit such a finding under either R.C. 3113.31(A)(1)(a) or 3113.31(A)(1)(b).
We must say that this is a very close case. It is unfortunate that the preservation of family health and safety at times conflicts with the preservation of the family unit. The question for us, however, is not even whether any one of us would have necessarily reached the same result that the trial court reached. R.C. 3113.31 authorizes Ohio trial courts to take steps that stop domestic violence before tragedy results. As a reviewing court, we are bound to credit the factual determinations made by the trial judge. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. We did not have the benefit of hearing the witnesses testify; the trial court did. We had no opportunity to see the witnesses' demeanor and gestures while they testified; the trial court did. The trial court was in a better position to fairly weigh the evidence and responsibly prescribe an appropriate remedy. We are unable to say that the trial court's judgment here is contrary to the manifest weight of the evidence.
White's two assignments of error are not well taken. The judgment is affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Domestic Relations Division of the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J., and
PATRICIA BLACKMON, J., CONCUR.
 ____________________________________ DIANE KARPINSKI PRESIDING JUDGE
[1] White insisted that the incident occurred on Wednesday, March 11, 1998. (Tr. 64; 188.) Valerie initially testified that the incident occurred on Thursday, March 12, 1998 (Tr. 123), but later agreed that it might have occurred on Wednesday, March 11, 1998. (Tr. 155.)
[2] This proceeding was restricted to the propriety of a civil protection order under R.C. 3113.31. This proceeding did not make a definitive disposition as to the issue of permanent custody for the minor child, and nothing in this opinion should be construed to suggest any opinion concerning the issue of permanent custody.
[3] Although R.C. 3113.31 does not define "serious physical harm," R.C. 2901.01(A)(5) defines "serious physical harm to persons" to mean, inter alia:
* * *
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
[4] If the trial court had erroneously found domestic violence under R.C. 3113.31(A)(1)(c), we would still be bound to affirm the judgment because a reviewing court may not reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof. State ex rel. Carter v. Schotten (1994), 70 Ohio St.3d 89,92. Because either R.C. 3113.31(A)(1)(a) or R.C.3113.31(A)(1)(b) would support a finding of domestic violence, an erroneous finding under R.C. 3113.31(A)(1)(c) would not require reversal here. See Halley v. Ashley, supra, at *2, fn. 1.