OPINION
This is an appeal of a judgment entry granting the petition of Rachel L. Anderson ("Appellee") for a civil protection order ("CPO") against her husband Christopher L. Anderson ("Appellant"). For the following reasons, we reverse the decision of the trial court and dismiss Appellee's petition.
The record reveals that the parties were married in 1994 and subsequently had one child together. The record also indicates that the parties were involved in divorce proceedings beginning in August of 1999.
On January 4, 2000, Appellee filed a Petition for a Domestic Violence Protection Order in the Mahoning County Court of Common Pleas, Division of Domestic Relations. The petition alleged that Appellee had agreed on December 30, 1999, to dismiss a prior CPO against Appellant, but that he had shortly thereafter become more violent. The petition was heard exparte before a magistrate. Pursuant to R.C. § 3113.31(D), a temporary protection order was granted pending a full hearing.
On February 2, 2000, both parties appeared with counsel before a magistrate for a hearing on the petition. Testimony revealed that on or about December 31, 2000, Appellant was involved in automobile accident, which resulted in him being taken to a hospital. Someone at the hospital called Appellee and informed her that Appellant was being taken to jail because he had kicked a nurse in the face. (Feb. 2, 2000 Tr., 6). Appellee testified that Appellant had told her a couple of days earlier that he was "going to blow his brains out." (Feb. 2, 2000 Tr., 3). Appellee also testified that Appellant had three felony and eight misdemeanor charges pending against him, including one for assault on a police officer. (Feb. 2, 2000 Tr., 4-5). Appellee testified that these incidents were the bases for her domestic violence CPO petition.
The magistrate granted the CPO on February 2, 2000, ordering Appellant to have no contact with Appellee or their children until February 2, 2005, and denying Appellant any visitation rights with the children until a chemical dependency assessment could be performed.
On February 11, 2000, Appellant filed objections to the magistrate's decision pursuant to Civ.R. 53(E). The court held a hearing on the objections on April 11, 2000, and on the same day issued its judgment entry overruling the objections and adopting the magistrate's decision. Appellant filed a timely appeal of this judgment entry on May 2, 2000.
The parties were granted a divorce on June 27, 2000. Appellant filed an appeal of the divorce decree on August 2, 2000, which was designated as Appeal No. 00-CA-158. The divorce appeal and the instant appeal of the CPO were consolidated by this Court on October 4, 2000. On October 26, 2000, Appellant's appeal of the divorce decree was dismissed as being untimely filed. The only issue remaining in this appeal is the validity of the CPO.
Appellant's sole assignment of error asserts:
 "WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING APPELLANT'S WRITTEN OBJECTIONS TO THE DECISION OF THE MAGISTRATE REGARDING A FINDING OF DOMESTIC VIOLENCE, WHERE THE RECORD INDICATES THE MAGISTRATE FOUND THAT DOMESTIC VIOLENCE OCCURRED, EVEN THOUGH NO EVIDENCE WAS PRESENTED THAT THE APPELLEE WAS EVER THREATENED OR HARMED IN ANY WAY ON THE DATE AND PLACE OR TIME ALLEGED IN APPELLANT'S COMPLAINT."
Appellant argues that a CPO granted pursuant to R.C. § 3113.31 must be based on credible evidence that the petitioner or the petitioner's family is in danger of domestic violence. Appellant argues that there is nothing in the record indicating that Appellee or her children were in danger of domestic violence. Based on the record presented, we must agree with Appellant's argument.
The purpose of a civil protection order issued pursuant to R.C. §3113.31 is to provide the petitioner or other household members with protection from domestic violence. Thomas v. Thomas (1988),44 Ohio App.3d 6, 7. When a petitioner is seeking a civil protection order pursuant to R.C. § 3113.31, "the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." Felton v. Felton (1997), 79 Ohio St.3d 34, paragraph two of the syllabus. The decision whether or not to grant a civil protection order is within the sound discretion of the trial court. Deacon v.Landers (1990), 68 Ohio App.3d 26, 31. Abuse of discretion, "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
Domestic violence, as a basis for a civil protection order, is defined in R.C. § 3113.31(A)(1) as:
 "`Domestic violence' means the occurrence of one or more of the following acts against a family or household member:
 "(a) Attempting to cause or recklessly causing bodily injury;
 "(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code.
 "(c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code."
Pursuant to these definitions, there are six ways a person could engage in domestic violence sufficient to justify a CPO: 1) by attempting to cause bodily injury to a family or household member; 2) by recklessly causing bodily injury to a family or household member; 3) by using the threat of force to cause a family or household member to be in fear ofimminent serious physical harm; 4) by committing menacing by stalking as defined by R.C. § 2903.111; 5) by committing aggravated trespass as defined by R.C. § 2911.211; or 6) by committing child abuse as defined by R.C. § 2151.031.
Threats of violence may constitute domestic violence pursuant to R.C. § 3113.31 if the fear resulting from those threats is reasonable.Eichenberger v. Eichenberger (1992), 82 Ohio App.3d 809, 815. The petitioner's history with the respondent is relevant in determining the reasonableness of the fear felt by the petitioner. Id.
The record does not support that Appellee or her child was in danger of any of the six types of domestic violence described in R.C. §3113.31(A)(1) at the time this CPO issued. There is no evidence of any specific incident in which Appellant harmed or attempted to harm Appellee or their child. There is no evidence of threats against Appellee or the child. There is scarcely any evidence in the record describing the history of the parties' relationship with each other. There are no allegations that Appellant engaged in menacing by stalking, trespass or child abuse.
Appellee made one somewhat oblique reference to the possibility that domestic violence may have occurred during the marriage:
 "MRS. ANDERSON: * * * I got a phone call from St. Elizabeth's Hospital January 1st, saying that [Appellant] was there and he had kicked a nurse in the face, and they were waiting for, he was on hold for the police to pick him up and take him to jail. The hospital notified me that he was there. And I had left and I had went to my mother's for a couple weeks because I didn't know when he would be out.
 "THE COURT: So based on all of this reported activity —
"MRS. ANDERSON: Yes.
 "THE COURT: — was this activity consistent with the kind of behavior that you experienced during your marriage?
"MRS. ANDERSON: Yes.
 "THE COURT: And that's why you are here, for yourself protection?
"MRS. ANDERSON: Yes."
(Feb. 2, 2000 Tr., 6-7). This testimony might possibly be interpreted to mean that Appellant committed violent acts against Appellee or her child during the marriage. It is equally plausible to understand this testimony to mean that Appellant was generally violent to others at times during the marriage. The testimony is simply too vague to use as the basis for a CPO.
Even if we were to conclude, based on Appellee's testimony quoted above, that Appellant committed or threatened to commit an act of domestic violence sometime during the marriage, further evidence is required to support the granting of this CPO. There is no dispute that a prior CPO was dismissed on December 30, 1999. A renewed CPO cannot be based solely on the same incidents which gave rise to a prior CPO. Woolumv. Woolum (1999), 131 Ohio App.3d 818, 821. Past domestic violence,coupled with current threats of domestic violence, may form the basis for a renewed CPO under R.C. § 3113.31. Id.; Bruner v. Bruner (Sept. 22, 2000), Mahoning App. No. 99 C.A. 285, unreported; Morris v. Stonewall
(Nov. 15, 1999), Clinton App. No. CA99-04-012, unreported.
There is no evidence of a threat of any kind being uttered by Appellant to form the basis for this new CPO. Appellee clearly indicated that Appellant did not threaten her on December 31, 1999:
"THE COURT: There was a phone call?
 "MRS. ANDERSON: Yes. And I, he had, he had, that night, New Year's Eve, after he had hung up the phone with me, he hit and run a red truck and he called the police officer —
 "THE COURT: Wait. How's this conversation on New Year's end? How did that conversation end?
"MRS. ANDERSON: I hung up the phone.
 "THE COURT: Did he make any threats to you that night, or he just starts telling you and then you hung up?
MRS. ANDERSON: He starts yelling and I hung up."
(Feb. 2, 2000 Tr., 4). Appellee also testified that she had no further contact with Appellant after this phone call. (Feb. 2, 2000 Tr., 4). Therefore, the record contains no evidence of a threat which could support a domestic violence CPO.
Appellant's overall reputation for violent behavior or his stated threat to do violence to himself which Appellee raised does not equate to an overt act of violence or a threat of violence toward Appellee. Any threat of imminent harm which appears in this record is not aimed at Appellee. Thus, the evidence reveals an insufficient nexus between Appellant's violent behavior on and after December 31, 1999, and Appellee's fear of domestic violence. It is simply not enough to rely on a prior, dissolved CPO as the apparent sole basis for granting an entirely new order. The record as presented to us in this CPO is singularly lacking in evidence required by statute.
For all these reasons, we must reverse the trial court's decision to grant the CPO as an abuse of discretion, and we dismiss Appellee's petition.
Donofrio, J., concurs.
DeGenaro, J., concurs.