DECISION AND JOURNAL ENTRY.
{¶ 1} Appellant, Gary Osherow ("Gary"), appeals the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, which granted a civil protection order to Appellee, Renae Osherow ("Renae"). We affirm.
 I. {¶ 2} Gary and Renae married in 1984; they were divorced in March of 2001. They have shared parenting of their only child, a daughter born June 13, 1990. In February of 1999, Gary pled guilty to charges of domestic violence. He later violated the no contact order, which resulted from his guilty plea. As a result, Gary served a total of between fourteen and sixteen weeks in prison on two separate occasions for violating the no contact order. The no contact order has since expired.
 {¶ 3} On November 27, 2001, Renae filed a petition for a domestic violence civil protection order ("CPO") pursuant to R.C. 3113.31. The Summit County Court of Common Pleas, Domestic Relations Division, granted Renae an ex parte CPO and ordered a full hearing to be held before the magistrate on the matter. The hearing was held on December 7, 2001 and December 17, 2001. On January 11, 2002, the magistrate granted Renae a CPO. On January 24, 2002, Gary filed objections to the magistrate's decision.
 {¶ 4} The trial court modified the CPO on February 20, 2002, and then again on April 9, 2002, allowing Gary to come into contact with Renae during mediation sessions and allowing him to contact her in writing for matters concerning their child. The letters could be delivered via their daughter or U.S. mail.
 {¶ 5} On November 11, 2002, an oral hearing was held in regards to Gary's objections. On December 31, 2002, the judgment entry was recorded. The judgment entry ordered the CPO to remain in full force and effect with the exception of agreed upon amendments allowing the daughter's items to be picked up and/or dropped off at Gary's parents' home and permission for Gary to attend his daughter's school functions, extracurricular activities, and bat mitzvah provided he stay a "healthy distance" from Renae. This appeal followed.
 II. Assignment of Error
"The Court Erred By Finding That The Actions Of The Appellant * * * Constituted Domestic Violence Under R.C. 3113.31."
 {¶ 6} In his sole assignment of error, Gary argues that Renae did not prove the necessary elements required by R.C. 3113.31 needed to obtain a CPO. Essentially, Gary asserts that the granting of the CPO was based upon insufficient evidence. We disagree.
 {¶ 7} An appellate court reviews the sufficiency of the evidence surrounding the granting of a CPO by determining whether the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case." Gatt v. Gatt, 9th Dist No. 3217-M, 2002-Ohio-1749, at ¶ 6, quoting C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, syllabus.
 {¶ 8} R.C. 3113.31 governs domestic relations, specifically the granting of civil protection orders. It states:
"After an ex parte or full hearing, the court may grant any protection order, * * * to bring about a cessation of domestic violence against the family or household members." R.C. 3113.31(E)(1).
 {¶ 9} R.C. 3113.31 then defines domestic violence as:
"`Domestic violence' means the occurrence of one or more of the following acts against a family or household member:
"* * *
"(b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation [of menacing by stalking or aggravated trespass] of the Revised Code." R.C. 3113.31(A)(1).
 {¶ 10} For a court to issue a CPO, "the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner * * * [is] in danger of domestic violence." Lavery v. Lavery (Dec. 5, 2001), 9th Dist. No. 20616, at 3, quoting Felton v. Felton (1997),79 Ohio St.3d 34, paragraph two of the syllabus.
 {¶ 11} At the full hearing held on December 7, 2001, Renae testified that on November 21, 2001, she reported to police that she had reason to believe Gary had been at her home looking into her windows. On November 25, 2001, Renae went to Gary's house to drop off tennis shoes that her daughter had requested. Renae testified that when she dropped off the shoes, Gary told her, "I'll get you next time." Renae testified that she interpreted the statement as a threat to her safety, although she did not think Gary would immediately act on it because a neighbor was watching. Renae stated that, "[h]e just seemed scary when he looked at me and said this, and I think he meant it." Renae testified that she called the police to report the incident two to three hours later. She also testified that Gary showed up at the same movie theater the night of November 25, 2001, and that he then followed her to her daughter's friend's house. Renae stated that Gary pulled into the friend's driveway before backing out, giving her reason to think she was being followed. However, Renae admitted that she never saw the driver or the license plate of the vehicle she believed was following her. Renae stated that she was further concerned because of Gary's history of physical abuse. On November 27, 2001, Renae petitioned the court for a CPO.
 {¶ 12} Threats of violence constitute domestic violence for the purposes of R.C. 3113.13 if the resulting fear is reasonable. Lavery, supra, at 4. Reasonableness of fear is determined by referencing the history between the petitioner and respondent. Eichenberger v.Eichenberger (1992), 82 Ohio App.3d 809, 815. Here, Renae testified that she feared for her safety as a result of the threat, and that Gary's past behavior added to that fear. Gary has previously pled guilty to domestic violence, which makes Renae's fear all the more reasonable.
 {¶ 13} At the continuance of the full hearing, held on December 17, 2001, Gary testified that he never stated, "I'll get you next time." He testified that he was angry at Renae because she was talking to their daughter during his time with her. Gary stated that Renae did not allow him to speak to his daughter when Renae cared for her. He further testified that he was at the same movie theater as Renae on the night in question, but that he did not see the same movie nor did he see Renae while he was there. He also testified that he did not follow her anywhere that evening.
 {¶ 14} Because Gary and Renae testified to different events, each party's credibility had to be evaluated. Credibility is determined primarily by the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The trial court stated in the journal entry that "[Renae's] testimony presents sufficient, credible evidence to prove by a preponderance of the evidence that Gary engaged in acts of domestic violence on or about November 25, 2001 that placed Renae in fear of imminent serious physical harm pursuant to R.C. 3113.31(A)(1)(b)."
 {¶ 15} Based on Renae's testimony coupled with Gary's past behavior, we find that the trial court did not err in granting Renae the CPO she requested. Gary's sole assignment of error is overruled.
 {¶ 16} III.
 {¶ 17} The sole assignment of error is overruled. The decision of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.
Judgment affirmed.
SLABY, P.J. and WHITMORE, J. concur.