OPINION
{¶ 1} Kenneth Dunson is appealing the judgment of the Montgomery County Common Pleas Court Division of Domestic Relations, which issued a domestic violence civil protection order.
 {¶ 2} Dunson and Jewel Heflin have been in a relationship for ten years. Heflin testified that she was Dunson's lover or mistress and lived with him prior to January of 2003. It was at this time that Heflin entered into a residential mental health and drug addiction treatment facility. During the period of time that Heflin was in the treatment center on her available weekends, Dunson would pick her up from the treatment center and take her to the residence at 1602 Academy Street where he lived. Upon her completion of the treatment program, Heflin stated that she had resided at the Academy Street address. Dunson separated from his wife three years ago and admitted that he had started a relationship with Heflin at the time.
 {¶ 3} In September of 2003, Heflin and Dunson began having difficulties. Heflin testified that she and Dunson had been arguing because he had wanted to engage in sexual intercourse and she had no longer wanted to do so. As a result of the arguing, Dunson locked Heflin out of the residence for several days. Heflin then returned to the residence, but they continued to have problems.
 {¶ 4} On September 25, 2003, Heflin filed a petition for a Domestic Violence Civil Protection Order, which was granted ex parte that day. On October 21, 2003, a hearing on the protection order was held. Among other things, Heflin testified at the hearing that Dunson had threatened to drive both of them off a bridge, pushed her, smacked her, grabbed her, shook her, and thrown her into a light pole. Moreover, she testified that this type of violence had occurred numerous times and that she was afraid of Dunson. Heflin further stated that part of her fear of Dunson stemmed from the fact that she had previously been in a relationship involving domestic violence and had been shot in the head as a result.
 {¶ 5} On November 14, 2003, the magistrate issued his decision and permanent order granting Heflin's petition for a domestic violence civil protection order. Dunson filed objections to that decision, but the trial court overruled Dunson's objections and adopted the decision of the magistrate on February 19, 2004. Dunson has filed this appeal from that judgment.
 {¶ 6} Dunson raises the following two assignments of error:
 {¶ 7} "[1] The lower court erred as a matter of law when it determined that appellee was a person living as a spouse so as to be a family or household member when the evidence was insufficient to sustain such a finding.
 {¶ 8} "[2] The lower court erred as a matter of law when it found that appellant engaged in domestic violence when such finding is against the manifest weight of the evidence."
 {¶ 9} Appellant's first assignment of error:
 {¶ 10} Dunson argues that the evidence presented at the hearing did not support the trial court's conclusion that Heflin and Dunson were cohabiting and therefore, the court erred in entering a domestic violence civil protection order. We disagree.
 {¶ 11} An individual may obtain a protection order against a respondent pursuant to R.C. 3113.31(C) if domestic violence has been committed upon a family or household member. R.C. 3113.31(A)(3)(a)(i) defines a family or household member to include a person living as a spouse, which is further defined in R.C. 3113.31(A)(4) as a person who is cohabiting with the respondent or who has cohabited within five years prior to the incident of domestic violence.
 {¶ 12} The Ohio Supreme Court has in addressing domestic violence civil protection orders stated that the "essential elements of cohabitation include the sharing of familial or financial responsibilities and consortium." State v. Williams, 79 Ohio St.3d 459,465, 1997-Ohio-79. We have previously stated that the burden of establishing cohabitation is not substantial. State v. Young (Nov. 20, 1998), Montgomery App. No. 16985.
 {¶ 13} When determining whether parties shared responsibilities in the household, the court may consider provisions for shelter, food, clothing, utilities, and/or commingled assets. Williams, supra at 465. InDyke v. Price (Oct. 20, 2000) Montgomery App. No. 18060, this Court held that sharing shelter, providing food, and utilizing the same address for employment purposes met the prong of "shared responsibilities". See alsoState v. Williams (Oct. 6, 2000), Clark App. No. 99 ca 72 (finding that sharing housing, transportation, and food for a six week relationship met the definition of "shared responsibilities"); State v. Colter (Mar. 17, 2000), Montgomery App. No. 17828 (stating that living off and on for several months when combined with the respondent providing clothing for the petitioner amounted to shared responsibilities); State v. Cohagen
(Sept. 21, 2000), Franklin App. No. 99AP-1297 (finding "shared responsibilities" could be as little as frequent visits and sharing food).
 {¶ 14} In the instant case, Heflin provided testimony that she and Dunson shared familial and financial responsibilities. Heflin testified that she lived with Dunson prior to attending the resident treatment program at Nova House. Moreover, Heflin testified that she had lived at the residence with Dunson whenever she had weekend passes from Nova House and after she had left Nova House. Further, Dunson had signed a form for the Ohio Department of Job and Family Services stating that Heflin lived with him. Additionally, Heflin testified that she used her food stamps from the Ohio Department of Job and Family Services to help buy food for the residence. (Tr. 24) Heflin also testified that she gave Dunson money from her social security income check to pay for household expenses. (Tr. 23). Dunson additionally admitted that he provided transportation for Heflin to and from Nova House. Moreover, Heflin testified that her children also stayed with her and Dunson at the residence "off and on" and that Dunson helped her raise her oldest child. (Tr. 28-29). This is sufficient evidence of shared shelter and shared provisions for food and household expenses for a finding of shared responsibilities.
 {¶ 15} In addition, Heflin provided evidence of consortium. The Ohio Supreme Court stated that when courts are attempting to determine consortium, potential factors it may consider are mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship and conjugal relations. Williams, supra at 465. At the hearing, Heflin testified that she and Dunson had been in a relationship off and on for ten years. Heflin described herself as Dunson's lover and /or mistress. (Tr. 19). Heflin testified that prior to her filing her petition she and Dunson were arguing over sex because he wanted to have sexual intercourse and she did not want to at the time. (Tr. 7) Heflin stated that she no longer wanted to have sexual intercourse with him. (Tr. 20). Further, Dunson never specifically denied that he had a sexual relationship with Heflin. (Tr. 37). This was sufficient evidence of a conjugal relationship between the parties. Further, Heflin presented evidence that Dunson provided comfort and aid to her. Dunson testified that he would go to Nova House and check on Heflin. (Tr. 35). When Heflin would get weekend passes from Nova House, Dunson would come and pick her up, take her to his residence for the weekend, and then take her back to the rehabilitation program at the end of the weekend. (Id.) After Heflin was released from Nova House, Dunson took Heflin back to Nova House in order for her to get her certificate. (Tr. 14-15, 17). The evidence of care and aid between Dunson and Heflin when combined with the evidence of a conjugal relationship provides sufficient evidence of consortium. This evidence of consortium when combined with the evidence that Heflin and Dunson resided at the same address and shared responsibilities there amounts to evidence of cohabitation supporting the trial court's judgment. Dunson's first assignment of error is without merit and is overruled.
 {¶ 16} Appellant's second assignment of error:
 {¶ 17} Dunson argues that the weight of the evidence does not support the court's finding of domestic violence, justifying the civil protection order. We disagree.
 {¶ 18} A trial court's decision in a civil matter is not against the manifest weight of the evidence provided it is based on competent, credible evidence that goes to each element of the case. State v.Wombold (Feb. 19, 1999), Montgomery App. No. 17191, unreported, citingSeasons Coal v. Cleveland (1984), 10 Ohio St.3d 77. In this regard, it is the duty of the trial court to judge the credibility of witnesses and determine the weight to be given their testimony. Id. An appellate court may not substitute its judgment for that of the trial court regarding the credibility of testimony. State v. Lillard (Oct. 24, 1997), Miami App. No. 97CA10, unreported.
 {¶ 19} In order for a trial court to issue a civil protection order, a petitioner must demonstrate that she is in danger of domestic violence by a preponderance of the evidence. Felton v. Felton (1997), 79 Ohio St.3d 34,42. Domestic violence as it applies in this case is either attempting to cause or recklessly causing bodily injury or placing another person in fear of imminent serious physical harm by the threat of force. R.C. 3113.31(A)(1). Domestic Violence can be proven by a preponderance of the evidence simply through the testimony of the victim. Felton, supra. The petitioner must demonstrate that she is in danger of domestic violence. Id. If a petitioner testifies that the respondent threatened to kill her, this combined with her testimony that she is afraid is enough to prove domestic violence. Eichenberger v. Eichenberger (1982),82 Ohio App.3d 809, 815.
 {¶ 20} Heflin argues that her testimony regarding several incidents of physical violence amounted to competent, credible evidence of domestic violence, supporting her petition. Heflin testified that on one prior occasion, Dunson had pushed her after an argument. (Tr. 7). Also, Heflin testified that Dunson had thrown her into a light pole in early 2003. (Id.) Finally, Heflin testified that in the past five years, Dunson had smacked her, pushed her in the face, grabbed her, and shook her. (Tr. 8-9). Heflin testified that on one occasion Dunson had told her that he would drive himself and Heflin off a bridge. (Tr. 4). Heflin also testified that she had previously been in an abusive relationship, which had culminated in her being shot in the head. (Tr. 9). Whether due to this background or not, Heflin testified that she was terrified of Dunson. (Tr. 5, 9). This evidence amounts to competent, credible evidence supporting the trial court's conclusion that domestic violence had occurred in the relationship. As such, we cannot say that the judgment of the trial court is against the manifest weight of the evidence. Dunson's second assignment of error is without merit and is overruled.
 {¶ 21} The judgment of the trial court is affirmed.
Brogan, P.J. and Grady, J., concur.