Plaintiff-appellee Barbara Rush (hereafter "wife") obtained a temporary protection order under R.C. 3113.31 against defendant-appellant Edward Rush (hereafter "husband") from the Cuyahoga County Domestic Relations Court. Husband contests that order and its related finding that he had violated the ex parte
order. We affirm in part and reverse in part.
The parties were divorced in Lake County on or about August 13, 1997. Although the Lake County Domestic Relations Court divorce order was not made a part of the record in the within case, other evidence in the record indicates that the Lake County court issued a shared parenting order for son J.R., whose date of birth was October 18, 1994. Under that order, each parent was to be the residential parent when the child was in that parent's care, and each parent was to enjoy regular visitation. The record reflects that visitation has been an ongoing source of bitterly acrimonious contention which would eventually include charges and counter-charges that J.R. had been abused. By December 8, 1997, in a motion to show cause in Lake County Domestic Relations Court, husband reported wife's repeated interference with his attempts to have visitation with J.R.
At some point in time which is not clear from the record, husband reported to the Cuyahoga County Children and Family Services (hereafter "CCCFS") his suspicions that wife was neglecting and abusing J.R.[1] CCCFS's investigation did not substantiate those allegations; instead, CCCFS referred the case in February 1998 to investigate whether husband was sexually abusing J.R. CCCFS also developed safety plans which called for a temporary suspension of husband's visitation to enable CCCFS to complete its investigation. CCCFS notified husband that a safety plan would be effective for thirty days commencing on April 13, 1998, and husband indicated that he would comply with that safety plan. Representatives of CCCFS instructed wife that she should not permit husband to have visitation with J.R. and threatened to remove J.R. from her custody if she did allow visitation. Notwithstanding CCCFS' threat, the visitation order by the Lake County court remained unchanged.
In the meantime, husband's contempt proceedings against wife for having previously denied him visitation proceeded in the Lake County Domestic Relations Court system. On or about May 5, 1998, the Lake County court found wife in contempt for interfering with husband's visitation. The court sentenced wife to thirty days in jail but allowed her to purge the contempt citation if she permitted husband to make up for lost visitation commencing May 15, 1998. Among other things, the Lake County court granted husband fifteen days of make-up weekday visitation and scheduled husband to have weekly visitation with J.R. from 5:00 p.m. on Tuesday through 12:00 p.m. on Thursday.
Wife testified she observed husband's van arrive at her apartment between 5:00 and 5:30 p.m. on Tuesday, May 19. 1998. She maintained that husband had no lawful purpose for being at her apartment and that, because of the instructions she had previously received from CCCFS, she would not allow him visitation. Wife explained she was scared and dialed 9-1-1 and later heard husband "banging on the door really hard." (Tr. 11.) When she did not open the door, husband left the premises without J.R. and the police, after stopping him briefly for questioning, permitted him to leave.
On May 20, 1998, wife initiated this proceeding by petitioning the Cuyahoga County Domestic Relations Court for a domestic violence civil protection order pursuant to R.C. 3113.31. Wife's petition sought protection on behalf of herself and J.R. and alleged that husband engaged in domestic violence when he appeared at wife's residence on May 19, 1998 "with no legal reason and began banging and slamming on her door." Wife's petition asserted: "Petitioner was fearful of her safety and that of her child." An ex parte protection order was issued that day barring husband from being within 500 feet of wife or J.R. and was reportedly served on husband on May 22, 1998.
Husband returned to wife's apartment on Tuesday, May 26, 1998, to pick up J.R. for visitation. Wife's neighbor recognized husband and called the police because she was aware of the existence of the ex parte temporary protection order. While the police reportedly declined to respond because the neighbor was not named on the protection order, husband eventually left the premises without incident.
The matter came before the court for a full hearing on June 5, 1998. Beyond the vituperation that was freely exchanged between the parties, the court heard from CCCFS representatives, who insisted that their various plans took priority over the Lake County visitation court orders and threatened to seek immediate custody over J.R. if the protection order was not continued.
At the conclusion of the full hearing, the court found that an incident of domestic violence did occur and that a protection order would continue for five years or until further order of the court. The court temporarily suspended husband's visitation with J.R. pending a CCCFS case plan or until CCCFS made arrangements for his visitation to be supervised by a case worker. The court further found that husband violated the ex parte protection order on May 26, 1998, but did not fine him because it was a first offense. The court noted that any further violation would result in a thirty-day jail sentence.
Husband appealed and raised eight assignments of error for review. His first, fourth, and fifth assignments of error present issues relating to the admission or exclusion of evidence and will be addressed jointly.
 I. THE TRIAL COURT ERRED IN ALLOWING THE INTRODUCTION INTO EVIDENCE OF TESTIMONY RELATED TO ACTS NOT SPECIFICALLY ALLEGED IN THE PETITION FOR PROTECTIVE ORDER.
 IV. THE TRIAL COURT ERRED IN LIMITING TESTIMONY CONCERNING THE HISTORY OF RESPONDENT'S VISITATION WITH THE MINOR CHILD.
 V. THE TRIAL COURT ERRED IN ALLOWING THE INTRODUCTION INTO EVIDENCE OF TESTIMONY BY A WITNESS CONCERNING INCIDENTS FOR WHICH SHE POSSESSED NO PERSONAL KNOWLEDGE.
These assignments of error contend that the trial court erred in admitting and/or excluding certain evidence during the full hearing on wife's petition for a protection order. Husband acknowledges that the admission or exclusion of evidence generally rests within the sound discretion of the trial court and a reviewing court may reverse only upon a showing that discretion was abused. See Peters v. State Lottery Comm. (1992),63 Ohio St.3d 296, 299; Frye v. Weber Sons Service Repair, Inc.
(1998), 125 Ohio App.3d 507, 516. We do not think the court abused its discretion in light of the issues the petition presented.
Protection orders issued under R.C. 3113.31 are recognized as an "appropriate and efficacious method to prevent future domestic violence * * *." Felton v. Felton (1997), 79 Ohio St.3d 34, 41. Because the domestic violence statutes assign to the courts the responsibility for issuing protection orders, "the courts have an obligation to carry out the legislative goals to protect the victims of domestic violence." Felton, 79 Ohio St.3d at 44-45. The Felton court observed:
 The General Assembly enacted the domestic violence statutes specifically to criminalize those activities commonly known as domestic violence and to authorize a court to issue protection orders designed to ensure the safety and protection of a complainant in a domestic violence case. Accordingly, R.C. 3113.31 authorizes a court in an ex parte
hearing to issue a temporary protection order when the court finds there to be an "[i]mmediate and present danger of domestic violence to the family or household member." R.C. 3113.31(D). Subsequent to this, the court proceeds as in a normal civil action and grants a full hearing. R.C. 3113.31(D). After such hearing, the court may issue a protection order that may direct the respondent to refrain from abusing the family or household members, grant possession of the household to the petitioner to the exclusion of the respondent, temporarily allocate parental rights and responsibilities and visitation rights, require the respondent to maintain support, require all parties to seek counseling, require the respondent to refrain from entering the residence, school, business, or place of employment of the petitioner, and grant any other relief that the court considers equitable and fair. R.C. 3113.31(E)(1).
Felton, 79 Ohio St.3d at 37-38 (citations and footnote omitted). When granting a protection order, the trial court must find by a preponderance of the evidence that the petitioner or the petitioner's family or household members are in danger of domestic violence. Felton, syllabus at paragraph 2.
Against this background, husband's first assigned error argues that wife's petition for a protection order should have been restricted to the events that occurred on May 19, 1998 and should not have included allegations that J.R. may have been sexually abused. We do not agree. In view of the issues to be considered in such a proceeding, we believe the trial court here acted within its discretion to hear evidence that was relevant to the safety of the minor child in order to render an appropriate decision consistent with R.C. 3113.31. Wife's petition for the protection order put husband on notice at least that wife claimed to be "fearful of her safety and that of her child." Husband was clearly aware that an investigation of allegations of sexual abuse was already underway. Nevertheless, husband did not seek a continuance of this hearing in order to defend against these allegations. Nor did husband show that he was prejudiced by including such issues in this proceeding. Because we are satisfied that the trial court properly considered matters beyond the events that occurred on May 19, 1998, we overrule husband's first assignment of error.
Husband's fourth assigned error argues that the court erred in excluding his testimony that wife had persistently denied him visitation with his son. This contention is not well taken. We are not convinced that the court even excluded husband's testimony. The transcript of the hearing reflects that when wife objected to this line of inquiry, husband argued that it was unfair for the court to hear evidence of alleged sexual abuse without also hearing that husband had been denied visitation. The court in fact allowed husband to testify that he had visited with his son about five times since September 1997 and that wife had otherwise denied him visitation. (Tr. 176-180.) Husband does not identify any other evidence he would have presented but was prevented from introducing. Nor has he shown any prejudicial error in connection with this issue, so we overrule his fourth assignment of error.
In his fifth assignment of error, husband complains that the court erred in admitting the testimony of wife's neighbor. The neighbor testified that she observed husband at wife's apartment on May 26, 1998, that she was aware that wife had previously obtained an ex parte protection order, and that she called the police to report husband's presence. Husband does not dispute the relevance of evidence suggesting he violated the previously issued protection order. He does dispute the relevance of the neighbor's additional testimony that she was otherwise familiar with husband because she had heard or read about a prior incident involving husband and the neighbor's mother. (Tr. 98-99.) While we agree that this evidence was, at best, of marginal relevance here, we are also mindful that "[g]reater latitude is permitted in evidentiary matters where a case is tried to a judge without a jury," because "[i]t is presumed that the court will consider only proper evidence in reaching its decision." Mason v. Swartz
(1991), 76 Ohio App.3d 43, 55. As one court observed:
 It must be recognized that the very nature of the duties of a judge often require him to have knowledge of inadmissible evidence. Every time he makes a ruling determining evidence inadmissible, he has to know what the inadmissible evidence consists of, and if he is the fact finder, he must eliminate same from his consideration in determining the facts.
Hawkins v. Marion Corr. Inst. (1990), 62 Ohio App.3d 863, 869. Nothing in the record in this case suggests that the trial court's decision was affected by the neighbor's testimony concerning husband's alleged past. Therefore, husband's fifth assigned error is not well taken.
Because husband's third and sixth assignments of error both relate to the testimony from a CCCFS social worker relating to the allegations that husband had sexually abused J.R., we will address them jointly.
 III. THE TRIAL COURT ERRED IN ALLOWING THE INTRODUCTION INTO EVIDENCE OF VARIOUS HEARSAY STATEMENTS.
 VI. THE TRIAL COURT ERRED IN ALLOWING A WITNESS TO GIVE HER OPINION REGARDING THE PURPORTED THREAT RESPONDENT POSED TO THE PETITIONER AND THEIR SON.
Husband's third assignment of error argues that the court erred in allowing a social worker assigned to the sex abuse intake department for CCCFS to repeat statements allegedly made by J.R. recounting incidents of improper conduct by his father. (Tr. 77-79.) Husband contends that these statements are inadmissible hearsay under Evid.R. 802 and do not fall within the hearsay exceptions for excited utterances, Evid.R. 803(2); statements for purposes of medical diagnosis or treatment, Evid.R. 803(4); or child abuse, Evid.R. 807. Wife has not appeared in this appeal and therefore does not dispute the inapplicability of these exceptions. Despite having been the proponent of this evidence, wife did not lay any evidentiary foundation that would permit these statements to be admissible under Evid.R. 803(2) or Evid.R. 803(4). The court, moreover, did not make the findings necessary to admit the statements under Evid.R. 807. We therefore agree with husband that these hearsay statements were not admissible.
Husband's sixth assigned error complains that the same social worker was improperly permitted to offer her opinion that husband was a threat to both J.R. and wife. (Tr. 81.) This evidence likewise lacked any foundation that would make it admissible. Under Ohio law, an expert may not testify as to the expert's opinion of the truth or falsity, or accuracy or inaccuracy, of the statements of a child declarant. State v. Moreland (1990),50 Ohio St.3d 58, cert. denied, 498 U.S. 882; State v. Boston
(1989), 46 Ohio St.3d 108. We do not think this witness could offer admissible opinion testimony under either Evid.R. 701 or 702 as to whether husband was a threat to J.R. or wife.
We accordingly sustain husband's third and sixth assignments of error. We next address husband's second assignment of error, which states:
 II. THE TRIAL COURT ERRED IN FINDING DOMESTIC VIOLENCE, AS DEFINED IN R.C. § 3113.31, HAD OCCURRED WHEN SUCH A FINDING WAS AGAINST THE WEIGHT OF THE COMPETENT EVIDENCE PRESENTED.
This assignment of error is well taken.
As we noted previously, when granting a protection order, the trial court must find that the petitioner has shown by a preponderance of the evidence that the petitioner or the petitioner's family or household members are in danger of domestic violence. Felton, syllabus at paragraph 2. The Felton court held that there was "sufficient, credible evidence to prove by a preponderance of the evidence that appellee had engaged in acts of domestic violence." 79 Ohio St.3d at 44. Based on Felton,
the question for us is whether there was sufficient credible evidence to support a finding that husband had engaged in acts or threats of domestic violence. See Felton, 79 Ohio St.3d at 43-44. See also Sroka v. Sroka (1997), 121 Ohio App.3d 728; Eichenbergerv. Eichenberger (1992), 82 Ohio App.3d 809. We conclude that there was not.
R.C. 3113.31(A)(1) defines "domestic violence" as
 the occurrence of one or more of the following acts against a family or household member:
 (a) Attempting to cause or recklessly causing bodily injury;
 (b) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;
 (c) Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code.
The trial court's judgment entry did not identify the precise ground upon which it determined that husband had engaged in acts or threats of domestic violence. To the extent that wife sought the protection order for herself, wife made no showing to sustain a finding of domestic violence under R.C. 3113.31(A)(1)(a). There was no evidence that husband caused or attempted to cause bodily injury to wife.
We also conclude that there was insufficient evidence to find that, by the threat of force, husband had placed wife in fear of imminent serious physical harm or committed a violation of section 2903.211 or 2911.211 of the Revised Code so as to sustain a finding under R.C. 3113.31(A)(1)(b). Wife testified that she was "scared" when husband knocked on her door on May 19, 1998, but wife provided no facts to show that her fear was objectively reasonable. Contrary to wife's assertion that husband had no lawful purpose for being at her apartment, the uncontroverted evidence showed that as of May 15, 1998, a Lake County Domestic Relations Court order authorized husband's presence by directing wife to have J.R. "available for pick up at [wife's] residence in the presence of herself or a responsible adult on Tuesdays at 5:00 p.m." The evidence further showed that the thirty-day "safety plan" established by CCCFS on April 13, 1998 had expired by the time of husband's appearance on Tuesday, May 19, 1998. Wife testified that she called 9-1-1 immediately upon seeing husband's van outside her apartment, even before he started "banging on the door really hard." (Tr. 11.) Husband's mere presence on May 19, 1998 could not reasonably place wife in fear of domestic violence.
Outside the events that occurred on May 19, 1998, wife did not identify a single specific incident before or after that date that would tend to suggest that she was in reasonable fear of domestic violence from husband. In the most conclusory fashion, she testified: "I have been stalked. I have been harassed. I was followed, watched, threatened — everything for the last — past four years, four years, and I can't get no help from nobody." (Tr. 17.) While a victim's history with the perpetrator may cause the victim to experience reasonable fear of the perpetrator's threats of domestic violence, see Eichenberger v. Eichenberger,supra, 82 Ohio App.3d at 815-816, wife's evidence here was vague and wholly lacking in specific details. Standing alone, such a general summary of past unadjudicated events is insufficient to show that the fear she claimed was objectively reasonable. Even after construing the evidence most favorably to wife, we are unable to say that she presented sufficient, credible evidence to sustain a finding under R.C. 3113.31(A)(1)(b).
To the extent that wife sought the protection order for the protection of J.R., we do not think wife presented admissible evidence to sustain a finding that husband had committed domestic violence towards his son. As we noted in reference to husband's third and sixth assignments of error, the evidence offered by wife was inadmissible. And as we also noted in our previous discussion, we presume that a trial judge hearing a case without a jury is not influenced by inadmissible evidence. See Mason v.Swartz, supra; Hawkins v. Marion Corr. Inst., supra. Nothing in the record suggests that the trial court relied on inadmissible evidence or otherwise concluded that husband had committed domestic violence towards his son.
Because the evidence adduced cannot sustain a finding that husband committed domestic violence under R.C. 3113.31(A)(1), husband's second assignment of error is sustained.
Husband's seventh assignment of error states:
 VII. THE TRIAL COURT ERRED IN FINDING MR. RUSH IN INDIRECT CONTEMPT OF COURT BECAUSE HE WAS NOT PROVIDED NOTICE THAT HE FACED CONTEMPT CHARGES.
This assignment of error is not well taken.
On May 20, 1998, the court entered an ex parte protection order forbidding husband from being within 500 feet of wife's residence. That order contained the following unambiguous warning to husband: "Violation of the attached Protection Order is a crime, punishable by imprisonment or fine or both, and can cause your bond to be revoked or result in a contempt of court citation against you." Husband admits that he went to wife's apartment on May 26, 1998. Although husband denied being aware of the protection order, the court determined that husband had been personally served with a copy of the ex parte order by May 22, 1998, before he returned to wife's apartment on May 26, 1998 (Tr. 135, 156.) On this record, the court could reasonably find that husband violated the ex parte protection order.[2] But even after finding this violation, the court did not impose a fine and noted that this was a first offense. The court added that "[a]ny further violation will result in a 30 day jail sentence." Husband was not prejudiced by the court's cautionary finding. We therefore overrule husband's seventh assignment of error.
Husband's eighth assignment of error states:
 VIII. THE CUYAHOGA COUNTY DOMESTIC RELATIONS COURT WAS WITHOUT JURISDICTION TO MODIFY THE VISITATION ORDER OF THE LAKE COUNTY DOMESTIC RELATIONS COURT AND TO ORDER SUPERVISED VISITATION BETWEEN MR. RUSH AND THE MINOR CHILD BY THE CUYAHOGA DEPARTMENT OF CHILDREN AND FAMILY SERVICES.
The trial court's protection order addressed temporary visitation rights and ordered husband not to have any visitation with J.R. pending the CCCFS case plan but ordered CCCFS to make arrangements for husband to have visitation supervised by a CCCFS case worker. Husband contends that the trial court lacked jurisdiction to modify husband's visitation rights. While our decision that the evidence was insufficient to sustain the temporary protection order necessarily vacates the additional order relating to visitation, we will address this assignment of error in the interest of judicial economy.
R.C. 3113.31(E)(1) provides, in relevant part:
 After an ex parte or full hearing, the court may grant any protection order, with or without bond, or approve any consent agreement to bring about cessation of domestic violence against the family or household members. The order or agreement may:
* * *
 (d) Temporarily allocate parental rights and responsibilities for the care of, or establish temporary visitation rights with regard to, minor children, if no other court has determined, or is determining, the allocation of parental rights and responsibilities for the minor children or visitation rights * * *. (Emphasis added.)
R.C. 3113.31(E)(3)(b) further provides, in part:
 Subject to the limitation on the duration of an order or agreement set forth in division (E)(3)(a) of this section, any order under division (E)(1)(d) of this section shall terminate on the date that a court in an action for divorce, dissolution or marriage, or legal separation brought by the petitioner or respondent issues an order allocating parental rights and responsibilities for the care of children or on the date that a juvenile court in an action brought by the petitioner or respondent issues an order awarding legal custody of minor children. * * *
In this case, it is clear from the record that the Lake County Domestic Relations Court had determined or was determining the visitation rights relating to the minor child. Indeed, the record indicates that the Lake County court was even aware that CCCFS was investigating matters pertaining to the minor child. Because the Lake County Domestic Relations Court had determined or was determining husband's visitation rights, the Cuyahoga County Domestic Relations Court lacked the authority under R.C.3113.31(E)(1)(d) to modify husband's visitation rights. Had wife sustained her burden in order to obtain a civil protection order under R.C. 3113.31, the court below would have had discretion to order husband to stay away from the family or household members named in the temporary protection order and this order would have necessarily restricted visitation by implication. But if husband's legal visitation rights were to be modified, we think that was for the Lake County court to decide. To the extent that the trial court's protection order here purported to modify husband's visitation rights, we believe the trial court was without that authority.
We must add that we appreciate the trial judge's attempt to bring some semblance of order to the chaos this case presented. On May 5, 1998, the Lake County Domestic Relations Court found wife in contempt and ordered her to make J.R. available to husband for visitation after May 15, 1998 or face sentencing for contempt of court. Two weeks later, on May 19, 1998, under the threat that CCCFS would file for custody over J.R. if she complied with the Lake County court order, wife denied husband visitation and obtained a temporary protection order from the Cuyahoga County Domestic Relations Court the next day. CCCFS demanded that wife deny husband visitation, without regard to the Lake County court's visitation order and without regard to the expiration of CCCFS's own thirty-day "safety plan" as of May 13, 1998. CCCFS declared to the court below that CCCFS would seek custody of J.R. immediately unless the court continued the exparte protection order. Yet CCCFS took no legal action, in either the Lake County courts or in the Cuyahoga County courts, that was at all consistent with what it insisted was in the child's best interests. On the contrary, CCCFS accelerated the conflict when it threatened wife's custody if she complied with a court order. CCCFS then pressed the Cuyahoga County Domestic Relations Court to resolve the conflict that CCCFS had precipitated. While the lower court's attempt to strike a reasonable balance is commendable, its decision cannot be sustained on the evidence presented.
Because we sustain husband's second assignment of error, the judgment entering a temporary protection order is reversed. The judgment finding husband to have violated the ex parte temporary protection order is affirmed.
This cause is affirmed in part and reversed in part.
It is ordered that appellee and appellant shall share equally the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Domestic Relations Division of the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JOHN T. PATTON, J., and MICHAEL J. CORRIGAN, J., CONCUR.
 _______________ DIANE KARPINSKI PRESIDING JUDGE
[1] Both parties were residents of Cuyahoga County at all times relevant to this case.
[2] While we have concluded on the basis of the full hearing that wife did not show by a preponderance of the evidence that either she or J.R. were in danger of domestic violence by husband, that does not negate the lawful effect of the ex parte
order entered on May 20, 1998 and does not provide husband with any grounds to defy that lawful court order. Nor could husband rely on the Lake County order and ignore the Cuyahoga County protection order. Such conflicts must be resolved in court.