This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Thomas Lavery ("Appellant"), appeals the decision of the Summit County Court of Common Pleas, Domestic Division, granting appellee, Marjory Lavery ("Marjory"), a civil protection order ("CPO"). We affirm.
 I.
On February 22, 2001, Marjory filed a petition with the trial court seeking a domestic violence CPO against her father, Appellant. The petition alleged that Appellant approached her in the hallway at Miller South Elementary School after a spelling bee. Marjory's petition states that Appellant and her brother, John Lavery ("John"), approached her and Appellant stated an obscenity that upset Marjory. John "pushed [her] up against a wall and threatened to hit [her] with a tripod." Appellant did not attempt to restrain John.
The trial court granted Marjory an ex parte CPO on the same day Marjory filed her petition. After a full evidentiary hearing, the magistrate decided to enter a final civil protection order. The magistrate found that the Miller South incident placed Marjory, by threat or force, in fear of imminent serious physical harm. R.C. 3113.31(A)(1)(b). Appellant timely objected to the magistrate's decision.
On May 5, 2001, the trial court overruled the Appellant's objections, found that the record supported the magistrate's findings and upheld the CPO against Appellant. The trial court ordered Appellant to: 1) not abuse Marjory; 2) stay away from Marjory and her residence, business, place of employment or school; 3) not contact Marjory or her residence, business, place of employment or school; 4) not hide, damage, remove or dispose of any property or pets owned by Marjory; 5) not cause or encourage any person to violate the order; and 6) not possess, use, carry or obtain any deadly weapon.
This appeal followed.
 II.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED BY FINDING THAT THE CONDUCT OF THOMAS LAVERY PLACED MARJORY LAVERY IN FEAR OF DOMESTIC VIOLENCE.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED BY FAILING TO DISMISS MARJORY LAVERY'S PETITION FOR DOMESTIC VIOLENCE CIVIL PROTECTION ORDER.
Appellant's two assignments of error are related and will be considered together for ease of discussion. In his two assignments of error, Appellant argues that the trial court erred in granting the domestic violence CPO. Specifically, Appellant challenges the sufficiency of the evidence Marjory presented for the CPO and asserts that the judgment was against the manifest weight of the evidence. We disagree.
Initially, we note that pursuant to R.C. 3113.31(D), a domestic relations court is allowed to grant a temporary order on an ex parte
basis to protect one from domestic violence. Following the issuance of a temporary ex parte order, the domestic relations court must schedule a full hearing on the domestic violence petition. After the hearing, "the court may grant any protection order, with or without bond, or approve any consent agreement to bring about a cessation of domestic violence against the family or household members." R.C. 3113.31(E)(1).
The issuance of a CPO is governed by R.C. 3113.31. In order for a CPO to be issued, "the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner * * * [is] in danger of domestic violence." Felton v. Felton (1997), 79 Ohio St.3d 34, paragraph two of the syllabus. As used in R.C. 3113.31 "`[d]omestic violence' means the occurrence of one or more of the following acts against a family or household member: * * * Placing another person by one threat of force in fear of imminent serious physical harm[.]" R.C. 3113.31(A)(1)(b).
Threats of violence constitute domestic violence for the purposes of R.C. 3113.31 if the fear resulting from those threats is reasonable.Conkle v. Wolfe (1998), 131 Ohio App.3d 375, 383, citing Eichenberger v.Eichenberger (1992), 82 Ohio App.3d 809, 815. The reasonableness of the fear felt by the petitioner is determined with reference to the petitioner's history with the respondent. Id., citing Eichenberger82 Ohio App.3d at 816.
When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. In determining whether a criminal conviction is against the manifest weight of the evidence:
 [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175; see, also State v. Otten (1986),33 Ohio App.3d 339, 340. Accordingly, before an appellate court will reverse a judgment as against the manifest weight of the evidence in a civil context, the court must determine whether the trier of fact, in resolving evidentiary conflicts and making credibility determinations, clearly lost its way and created a manifest miscarriage of justice.
At the hearing, Marjory testified that throughout her life Appellant was very abusive to her and her siblings. In the past, Appellant threatened to kill her and attempted to break her legs. On one occasion, "he threw a cup of water at [Marjory] and said `There, you're baptized. Now I can kill you.'" Appellant threw her out of the house when she was 17 years old. After leaving the house, Marjory testified that Appellant had stalked her and "followed people — [her] friends in an attempt to find [her] address and find [her]."
At the time of the hearing, felony charges for child abuse were pending against Appellant regarding the alleged history of abuse. Marjory testified that Appellant blamed her for making Appellant's abuse public and for the resulting felony charges.
On February 20, 2001, Marjory accompanied her younger sister, Kathleen, to a local school to observe a district spelling bee competition. After arriving at the school, Marjory's older sister, Mary, informed them that Appellant was in the auditorium. Marjory and Kathleen watched the spelling bee from outside the auditorium to avoid Appellant. After the spelling bee, Marjory again encountered Mary and an altercation ensued. During the altercation, Kathleen became upset and fled. Following the incident with Mary, Marjory left the building in order to locate Kathleen. Marjory stated that she subsequently returned to the school to continue her search for Kathleen.
Upon reentering the building, Marjory saw Appellant and John walking toward her in the hallway among a group of others departing from the school. Marjory testified that as she approached them, Appellant moved toward her and said "Fuck you." Marjory became very upset. John then approached her and placed his left hand on her throat and pushed her back toward the wall. Marjory testified that she thought John was going to hit her with the tripod he was holding in his other hand. Appellant did nothing to stop or restrain John. Thereafter, Appellant exited the building with John.
At Miller South, Marjory believed that Appellant would carry out his threats of violence. Marjory testified "I am very afraid that if [Appellant] finds my address he will come and hurt me or vandalize my home or hurt my friends. * * * I am very afraid for my life and safety and I do not feel safe around [Appellant] or him knowing where I live."
On cross-examination, Marjory stated that none of the other people in the hallway intervened during the incident. She was not aware if the other people in the hallway observed the incident or heard Appellant's obscene comment.
Appellant testified that he does not know Marjory's address, phone number or her friends. He stated that Marjory threatened him that she would "make trouble" if he tried to separate her from her fiancé. Appellant stated that he did not approve of Marjory's fiancé because of the large difference in their ages. His disapproval of the fiancé led to Marjory moving out of the house.
Appellant and John were at Miller South to observe the first of two district spelling bees. He planned on videotaping his daughter, Kathleen, who would be competing in the second district spelling bee. The first spelling bee provided him an opportunity to find the best location to videotape the next competition. He admitted that he was aware of the possibility of running into Marjory at the spelling bee.
Appellant testified that he encountered Marjory in the hallway. According to him, the entire incident lasted approximately ten seconds. He denied making any obscene comments. Appellant stated that Marjory was yelling and directly walked up to Appellant and John. John approached Marjory and placed himself between her and Appellant in an attempt to prevent any type of trouble. Then Appellant and John left the building.
Appellant testified that last spring he followed Marjory's fiancé from the University of Akron to a restaurant and then back to the university. On cross-examination, he could not explain what he hoped to gain from following the fiancé. Appellant also admitted that there was an order from the University of Akron that prevented him from coming onto campus except for a specific purpose related to his wife, an employee of the University, or John, a student at the university. The order was a result of several campus officers filing complaints regarding Appellant's behavior on campus.
On cross-examination, Appellant stated that he was planning to videotape Kathleen's spelling bee because he was afraid that if he personally appeared at her competition that the police would arrest him. Appellant was unable to explain to the court why the police refused to allow his wife and sister-in-law to enter the spelling bee or why he believed that the police would arrest him for attending the spelling bee.
To prevail on her request for a CPO, Marjory had to show by a preponderance of the evidence that she was in danger of domestic violence. See Felton, 79 Ohio St.3d at paragraph two of syllabus; R.C.3113.31. To demonstrate a danger of domestic violence Marjory needed to show that on one or more occasion Appellant's threat of force placed her in fear of imminent serious physical harm. R.C. 3113.31(A)(1)(b). Marjory presented evidence of her personal history with Appellant to demonstrate the reasonableness of her fear. She testified that Appellant had physically abused her in the past and that he verbally harassed her at Miller South.
Although Appellant denied the abuse in the past and although he claimed that he behaved appropriately during the Miller South incident, issues of credibility are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Thus, the trial court could reasonably find that Appellant's actions at Miller South caused Marjory to fear imminent serious physical harm.
After a careful review of the record, we cannot say that the trial court clearly lost its way and created a manifest miscarriage of justice. Because this Court finds that the conviction was supported by the weight of the evidence, we necessarily find that there was sufficient evidence to support the CPO. Appellant's first and second assignments of error are overruled.
 III.
Having overruled Appellant's two assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BATCHELDER, P.J., SLABY, J. CONCUR.