[Cite as *Williams v. Hupp*, 2011-Ohio-3403.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| SUSAN J. WILLIAMS, | ) | |
| | ) | CASE NO. 10 MA 112 |
| PETITIONER-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| WALTER C. HUPP, | ) | |
| | ) | |
| RESPONDENT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:        Civil Appeal from Common Pleas
                                 Court, Domestic Relations Division,
                                 Case No. 09 DV 541.


JUDGMENT:                        Affirmed.


APPEARANCES:
For Petitioner-Appellee:         No Brief Filed.


For Respondent-Appellant:        Attorney Gregg A. Rossi
                                 Rossi & Rossi
                                 26 Market Street, 8th Floor
                                 Huntington Bank Building
                                 P.O. Box 6045
                                 Youngstown, OH 44501


JUDGES:
Hon. Mary DeGenaro
Hon. Cheryl L. Waite
Hon. Gene Donofrio


                                 Dated: June 24, 2011

DeGenaro, J.

{¶1} Respondent-appellant, Walter Hupp, appeals the Mahoning County Court of Common Pleas, Domestic Relations Division's judgment entry which adopted the magistrate's decision, found Hupp committed an act of domestic violence against petitioner-appellee, Susan Williams, and issued a civil protection order pursuant to R.C. 3113.31. Hupp argues that the trial court erred when it affirmed the civil protection order because his behavior during an argument at the county fair did not constitute a threat that placed Williams in fear of imminent physical harm.

{¶2} Upon review, Hupp's assignment of error is meritless. Under R.C. 3113.31(A)(1)(b) a person can seek a civil protection order for domestic violence if a family member has placed them in fear of imminent serious physical harm by threat of force. In order for a threat to constitute domestic violence the petitioner must reasonably fear imminent physical harm. Under this test the court looks at both subjective and objective evidence, including past incidents between the parties, to determine whether the fear was reasonable. Because Williams presented evidence at two separate hearings indicating that she feared imminent physical harm when Hupp chased her and threatened to kill her, the trial court properly found Hupp engaged in an act of domestic violence and issued a R.C. 3113.31 civil protection order. Accordingly, the judgment of the trial court is affirmed.

## Facts & Procedural History

{¶3} Williams filed a R.C. 3113.31 petition for a domestic violence civil protection order arising out of events that occurred at the county fair. Williams sought a protection order for herself, her mother, father, and former step-daughter, M.H., who is Hupp's biological daughter. An ex-parte temporary order of protection for these persons was issued the same day. The magistrate held a full hearing on the petition on November 12, 2009. Both Williams and Hupp testified about the events at the county fair that led Williams to file her petition. Williams' friend, and mother of M.H., Dawn Howell, also testified.

**{¶4}** Williams testified that on September 6, 2009 she was at the fair with M.H., Howell, and other friends, when Hupp and his girlfriend approached her and M.H. at a food stand. Williams stated that as she tried to leave the concession area Hupp kicked her and tried to trip her and started screaming obscenities at her. Williams testified that she and M.H. started running towards the police station located on the fair grounds and that Hupp followed her shouting obscenities and threatening to kill her. Specifically, Williams testified that Hupp screamed "I'm going to f-ing kill you." Williams stated that she was fearful of Hupp and that he was in a rage.

**{¶5}** Williams also testified that two days after this incident, she came home to find obscenities written in soap throughout her barn, and several days later she noticed an "X" was spray painted under her bedroom window. Williams believed Hupp was the person who defaced her property because he called her the same obscenities during their argument at the fair. Williams presented no additional evidence indicating Hupp was responsible for these acts.

**{¶6}** Howell testified that she heard Hupp screaming obscenities and threatening to kill Williams and that Hupp told Williams "she needed to get the f- -ing house out of his name or she would pay." Howell also testified that she saw Williams running away from Hupp and noted that Williams appeared fearful during this incident.

**{¶7}** Hupp testified that he and Williams were angry throughout their marriage and that they argued. Concerning the events on September 6, 2009, Hupp testified that he did not threaten to kill Williams, but did admit to screaming at her. Hupp denied screaming obscenities at Williams, but admitted to swearing while arguing with Howell. Hupp testified that he told Williams she had two weeks to get paperwork done on their former marital residence or he was going to go to court. Hupp also testified that he had not been on Williams' property for two years, had not had contact with her during that time period, and denied defacing her property.

**{¶8}** The magistrate issued the civil protection order for Williams only, finding that: "Respondent placed Petitioner, by threat of force, in fear of imminent serious physical harm. In particular, on September 6, 2009, Respondent threatened to kill

Petitioner. This statement was corroborated by a witness who heard Respondent say it, and Petitioner has reason to believe that Respondent would harm her based upon past conduct."

{¶9} Hupp filed objections, arguing that the magistrate's conclusions were not supported by the evidence. The trial court sustained Hupp's objections, finding that there was not sufficient evidence in the record to determine whether Williams reasonably believed that Hupp would harm her. The trial court remanded the case to the magistrate for a hearing on this issue.

{¶10} The magistrate conducted a second hearing, at which Williams testified about instances of Hupp's past violent behavior. Specifically, Williams testified that, during their marriage, Hupp: 1) on several occasions chased her in his car to her parents house after they had been fighting; 2) chased her with a shotgun from their marital home to her parents home; 3) pushed her into a corner, took out a knife, and cut a mattress; and 4) was arrested for domestic violence after kicking in a door in their house, damaging a ceiling fan with a broom, and threatening to kill her. Regarding the domestic violence arrest, Williams testified that police officers had to pin Hupp to the ground in order to arrest him and that she only dropped the charges after he agreed to take anger management classes, but that Hupp never completed them.

{¶11} Williams also described two past incidents that occurred at her workplace, where both she and Hupp were employed. First, that Hupp became so angry during an argument that he punched a hole in the wall. Second, that on another occasion Hupp became so angry that he pushed a locker through a wall.

{¶12} Hupp also testified about these events at the second hearing. Hupp admitted that he has a temper but disagreed with Williams' testimony and characterization of the events. Hupp testified that he was not violent with Williams but there were occasions where he had to restrain Williams to prevent her from scratching or biting him. Hupp also testified that Williams physically hurt him, and that during their marriage she had kicked him, breaking two of his ribs.

{¶13} Regarding the shot gun incident, Hupp testified that he was outside target

shooting when he started arguing with Williams, and after Williams left he unloaded the gun and placed it in his house. Hupp testified that during the argument with Williams that led to his arrest for domestic violence, he was in the kitchen sweeping, became frustrated with the situation and he threw his hands up and the broom hit the fluorescent light and the ceiling fan. Hupp denied attempting to hit Williams during that incident.

{¶14} The magistrate issued a civil protection order. Hupp filed objections which the trial court overruled and issued a civil protection order. The court found that Williams demonstrated by a preponderance of the evidence that Hupp verbally threatened to kill her and that she feared for her safety. The trial court also explicitly noted that the magistrate found Williams was a more credible witness than Hupp, and that it found no error with this conclusion.

### Civil Protection Order

{¶15} In his sole assignment of error, Hupp asserts:

{¶16} "The trial court abused its discretion in granting Appellee's civil protection order."

{¶17} Hupp argues that Williams was not a victim of domestic violence for two reasons. First, he did not threaten Williams, and second Williams did not fear imminent bodily harm because her fears were unreasonable.

{¶18} Several Ohio appellate courts have noted the districts inconsistently apply the standard of review in civil protection order cases. *See Abuhamda-Sliman v. Sliman*, 161 Ohio App.3d 541, 2005-Ohio-2836, 831 N.E.2d 453; *Young v. Young*, 2d Dist. No. 2005-CA-19, 2006-Ohio-978. The Eighth District, discerned that "three standards have been applied: (1) abuse of discretion; (2) 'whether the judgment was supported by competent, credible evidence going to all essential elements;' and (3) some combination of the first two tests." *Young* at ¶17, citing *Abuhamda-Sliman* at ¶8–9. This district has fallen prey to this inconsistency. See *Martin v. Hanood*, 7th Dist. No. 08 JE 6, 2009-Ohio-1501, at ¶12; *Martauz v. Martauz*, 7th Dist. No. 08 MA 135, 2009-Ohio-2642, at ¶17 (applying abuse of discretion standard when reviewing the trial court's decision to deny and grant, respectively, a civil protection order). But, see, *Rosine v. Rosine*, 7th Dist. No.

09-MA-18, 2010-Ohio-613, at ¶11 (applying manifest weight of the evidence when reviewing the trial court's granting of a civil protection order).

**{¶19}** Other districts have found that the wording of R.C. 3113.31 dictates that the standard of review in these cases "depend on the nature of the challenge to the protection order." *Abuhamda-Sliman* at ¶9 (Eighth District). See also *Young* at ¶20 (Second District); *Walters v. Walters* 150 Ohio App.3d 287, 2002-Ohio-6455, 780 N.E.2d 1032, at ¶9-10 (Fourth District); *Downs v. Strouse*, 10th Dist. No. 05AP-312, 2006-Ohio-505, at ¶10-11. The Eighth District noted that:

**{¶20}** "[b]ecause R.C. 3113.31 expressly authorizes the courts to craft protection orders that are tailored to the particular circumstances, it follows that the trial court has discretion in establishing the scope of a protection order, and that judgment ought not be disturbed absent an abuse of discretion. When the issue is whether a protection order should have issued at all, however, the resolution of that question depends on whether the petitioner has shown by a preponderance of the evidence that the petitioner or the petitioner's family or household member was entitled to relief." *Abuhamda-Sliman* at ¶9.

**{¶21}** Thus, when the challenge concerns the scope of the order, the appellate court reviews for an abuse of discretion. But when the challenge concerns the existence of the order itself, the appellate court reviews the record to determine whether competent, credible evidence supports the trial court's finding. In accord with our sister districts, we determine the better course is to apply a manifest weight standard of review when the issue is whether a civil protection order should issue, and an abuse of discretion standard of review when the issue is the scope of the civil protection order. Here, Hupp challenges the existence of the civil protection order, not its scope. Thus, we will review this case to determine whether competent, credible evidence supports the trial court's finding that a civil protection order should issue, applying a manifest weight standard of review.

**{¶22}** When determining whether a trial court's judgment is against the manifest weight of the evidence, an appeals court is "necessarily constrained by the principle that judgments supported by competent, credible evidence going to all elements of the case must not be reversed." *Gerijo v. City of Fairfield* (1994), 70 Ohio St.3d 223, 226, 638

N.E.2d 533, citing *C.E. Morris Co. v. Foley Constr.* (1978), 54 Ohio St.2d 279; 8 O.O.3d 261, 376 N.E.2d 578, at syllabus. The court must indulge every reasonable presumption in favor of the trial court's judgment and findings of fact. *Gerijo*, supra, citing *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. If the evidence is susceptible to more than one interpretation, the court must construe it consistently with the trial court's judgment. *Gerijo*, supra, citing *Ross v. Ross* (1980), 64 Ohio St.2d 203, 18 O.O.3d 414, 414 N.E.2d 426.

{¶23} A petitioner seeking a civil protection order under R.C. 3113.31 must prove domestic violence or the threat of domestic violence by a preponderance of the evidence. *Felton v. Felton* (1997), 79 Ohio St. 3d 34, 679 N.E.2d 672, at paragraph two of the syllabus. R.C. 3113.31(A)(1)(b) defines domestic violence to include "placing another person by the threat of force in fear of imminent serious physical harm." Thus, for the purposes of obtaining a civil protection order, a person commits domestic violence if he places a family member in fear of imminent serious physical harm by threat of force. R.C. 3113.31(A)(1)(b).

*Threat*

{¶24} Hupp first argues that the trial court erred when it granted a civil protection order as he never threatened Williams and therefore never committed an act of domestic violence. Hupp alternatively argues that the only corroborated statement that could be considered a threat was "she needed to get the f- -ing house out of his name or she would pay." Hupp asserts that this ambiguous statement does not qualify as a threat because it has several possible meanings and is a conditional statement. This argument lacks merit for two reasons.

{¶25} Addressing Hupp's alternative argument first, threats need not be verbalized, the threat can be apparent from conduct. *See Siouffi v. Siouffi* (Dec. 18, 1998), 2d Dist. No 1711; *Martauz*, supra. In *Siouffi*, the respondent took a knife from the couple's kitchen, went outside to the petitioner's parked car, slashed at least one of her tires and then forced his way back into their home. The Second District held that this behavior constituted a threat under R.C. 3113.31. In *Martauz*, this Court found that a

respondent's obsessive behavior including: repeated telephone calls, text messages, and repeatedly knocking on the petitioner's doors and windows, when coupled with the statement that a "civil protection order could not protect "* * *" [petitioner] if he 'snapped,'" constituted a threat under R.C. 3113.31. Id. at ¶42.

{¶26} Hupp kicked Williams, tried to trip her and then chased her through a county fair while shouting obscenities at her and undisputedly yelling "she needed to get the f- -ing house out of his name or she would pay." While this phrase is open to several interpretations, the interpretation of the magistrate and trial court was that Hupp threatened to kill Williams. Further, Hupp's behavior alone is sufficient to constitute a threat under R.C. 3113.31. He not only kicked Williams but tried to trip her and proceeded to chase her through a county fair in an aggressive manner while shouting obscenities. This behavior is sufficient to support the trial court's finding that Hupp threatened Williams with serious physical harm.

{¶27} Second, although Hupp denied that he ever threatened to kill Williams, Williams testified that Hupp shouted "I'm going to f-ing kill you." The magistrate specifically found that Hupp threatened to kill Williams and the trial court noted that the magistrate found Williams was the more credible witness. "The appellate court is not in as good a position to assess the demeanor and credibility of witnesses, and thus must usually defer to the trial court on such issues." *Martin v. Hanood*, 7th Dist. No. 08 JE 6, 2009-Ohio-1501, at ¶14. Thus, this court cannot say that Hupp did not threaten to kill Williams. Stating that you want to kill someone is clearly and undeniably a threat of serious physical harm. There is competent, credible evidence to support the trial court's conclusion that Hupp threatened Williams.

*Reasonableness*

{¶28} Next, Hupp argues that Williams' fear of harm from him was unreasonable. Threats of violence constitute domestic violence under R.C. 3113.31(A)(1)(b) if the fear resulting from the threats is reasonable. *Solomon v. Solomon*, 157 Ohio App.3d 807, 2004-Ohio-2486, 813 N.E.2d 918, at ¶ 22; *Eichenberger v. Eichenberger* (1992), 82 Ohio App.3d 809, 816, 613 N.E.2d 678. In order to determine if the fear is reasonable, the trial

court considers past acts of domestic violence. *Eichenberger* at 816. "But a court may not issue a civil protection order based solely on past acts of domestic violence." *Solomon* at ¶23. This "inquiry involves both subjective and objective elements." *Martauz* at ¶40, citing *Fleckner v. Fleckner*, 177 Ohio App.3d 706, 2008-Ohio-4000, 895 N.E.2d 896, at ¶20.

**{¶29}** Hupp first argues that Williams cannot meet the subjective requirement of the reasonableness test because she did not affirmatively state that she feared imminent physical harm. Williams testified that she feared for her safety and Howell testified that she thought Williams was afraid. Based on this testimony there was competent, credible evidence the magistrate and trial court relied on when it determined that Williams' fears were reasonable.

**{¶30}** Hupp secondly argues that Williams' fear was objectively unreasonable given the parties' past experiences. After the first hearing in this matter the trial found that the testimony concerning the parties past relationship was inadequate to determine whether Williams' fears were objectively reasonable, and remanded the case for a hearing to determine whether, based on past incidents, Williams reasonably feared imminent physical harm. Williams testified to five separate incidents where Hupp behaved in a threatening and extreme manner, including chasing Williams with a shotgun. Williams also testified that Hupp was arrested for domestic violence after one of these incidents. Although Hupp denied or disagreed with Williams' characterization of these events, the magistrate and trial court specifically found that Williams was the more credible witness and that Williams' fears were reasonable. As stated previously, it is not the function of this Court to reweigh the evidence or credibility of the witnesses. Thus, there is competent, credible evidence that given these past acts of domestic violence, Williams reasonably feared imminent physical violence.

**{¶31}** Additionally, Hupp argues that Williams did not reasonably fear imminent physical harm because the past incidents were too remote. Case law concerning civil protection orders specifically states that courts are to consider the past conduct of the parties when determining whether the petitioner's fears were reasonable. *See*

*Eichenberger* at 816, *Martauz* at ¶40, *Solomon* at ¶23, *Fleckner* at ¶20.

**{¶32}** Furthermore, none of the case law or R.C. 3113.31 provides that there is a date when past conduct is no longer relevant to a determination of reasonableness. The Fourth District held, when determining whether there was a time limit for filing a R.C. 3113.31 petition: "whether an occurrence of domestic violence is recent enough to warrant a civil protection order is a matter committed to the sound discretion of the trial court." *Murral v. Thomson*, 4th Dist. No. 03CA8, 2004-Ohio-432, at ¶10. In *Murral*, the Fourth District upheld a civil protection order that was based on an incident that occurred a year and a half before the petitioner filed for a protection order. Id. Given that incidents over a year old can be the impetus for filing a petition for a civil protection order, the magistrate and trial court did not err when it found that multiple two year old events were recent enough to determine that Williams' fears were objectively reasonable.

**{¶33}** In sum, there is competent, credible evidence to conclude that Hupp threatened Williams with imminent serious bodily harm on September 6, 2009. As the civil protection order issued by the trial court is not against the manifest weight of the evidence, the judgment of the trial court is affirmed.

Waite, P.J., concurs in judgment only.

Donofrio, J., concurs.