[Cite as *H.A. v. J.A.*, 2026-Ohio-847.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

H.A.,

Petitioner-Appellee,

v.

J.A.,

Respondent-Appellant.

---

### OPINION AND JUDGMENT ENTRY
### Case No. 25 MA 0057

---

Civil Appeal from the
Court of Common Pleas, Domestic Relations Division, of Mahoning County, Ohio
Case No. 2025 DV 00045

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Patricia A. Morris*, Law Office of Patricia Morris, and *Atty. Charles G. Mickens*, for Petitioner-Appellee

*Atty. Christopher A. Maruca*, The Maruca Law Firm, LLC, for Respondent-Appellant

Dated: March 13, 2026

**WAITE, P.J.**

{¶1} Appellant Justin Acri ("J.A.") appeals the decision of the Mahoning County Domestic Relations Court to issue a domestic violence civil protection order (DVCPO) in favor of his wife, Appellee H.A. Although the magistrate recommended the DVCPO not be granted, Appellee filed objections, and the court sustained her objections. Appellant contends the evidence does not support the trial court's decision, but the record shows that Appellee feared that Appellant would commit an act of domestic violence. Appellant, by the threat of force, placed Appellee in fear of imminent serious physical harm when he wielded a gun in her presence, and the evidence fully supports the decision to grant the DVCPO.

{¶2} Appellant also argues that the trial court committed error when it failed to adopt the magistrate's decision recommending the DVCPO not be granted. Once objections to the magistrate's decision were filed pursuant to Civ.R. 65.1(F)(3)(d), the court was well within its power to separately review the evidence and make its own determination whether the record supported granting the DVCPO. The court's judgment entry contains extensive citations to the record and fully explains why Appellee's objections were sustained. Appellant's assignments of error are without merit, and the judgment of the trial court is affirmed.

<u>Facts and Procedural History</u>

{¶3} On January 31, 2022, Appellee H.A. filed a petition for DVCPO in the Mahoning County Domestic Relations Court against her husband, Appellant J.A. The basis of her petition was that Appellant, while distraught, took a gun and bullets from their home on January 30, 2025, hid the gun behind his back as she approached him, and then

told her to take the gun away from him. She told him he was scaring her, and she asked him to put the gun down. Appellant told her he was thinking of doing "something stupid," but eventually did put the gun down, and they returned to the house where their children were sleeping. Appellee talked to Appellant's counselor the next morning about what had happened, and then filed her petition seeking a DVCPO. Appellant was served with an ex parte DVCPO on February 5, 2025. On that same day Appellant filed for divorce. A full hearing on the DVCPO took place on March 14, 2025 before a magistrate. The magistrate denied Appellee's petition for a protection order.

**{¶4}** Appellee filed objections to the magistrate's decision, and the transcripts of the magistrate's hearing was filed with the court. A hearing was held on the objections on May 5, 2025. The court sustained the objections and granted the DVCPO in favor of Appellee. The final appealable order was filed on May 20, 2025. Timely notice of appeal was filed on June 20, 2025. For ease of understanding, Appellant's two assignments of error will be treated together.

ASSIGNMENTS OF ERROR

THE COURT ABUSED ITS DISCRETION AND COMMITTED AN ERROR OF LAW IN REJECTING THE MAGISTRATE'S DECISION TO DENY THE CIVIL PROTECTION ORDER WHERE WIFE FAILED TO PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT HUSBAND PLACED HER, BY THREAT OF FORCE, IN FEAR OF IMMINENT SERIOUS PHYSICAL HARM.

THE COURT ABUSED ITS DISCRETION AND COMMITTED AN ERROR OF LAW IN FINDING THAT WIFE'S PURSUIT AND PERSISTENCE IN ENGAGING WITH HER DISTRAUGHT SPOUSE WHO REMOVED HIMSELF FROM HER PRESENCE CREATED A REASONABLE FEAR IN WIFE, BY THREAT OF FORCE, OF IMMINENT SERIOUS PHYSICAL HARM PURSUANT TO THE DOMESTIC VIOLENCE STATUTE, R.C. 3113.31(A).

{¶5} Appellant argues that the preponderance of the evidence did not support the trial court's decision to grant the DVCPO.  He argues that Appellee's claim to have been afraid of him on January 30, 2025 was not reasonable, as it was Appellee who pursued him during the course of the evening, which is not what a reasonable person would do if she were truly afraid.  Appellant's brief is supported by only two citations to the law.  One is to the domestic violence statute, and the other to *Eichenberger v. Eichenberger*, 82 Ohio App.3d 809 (10th Dist. 1982), which stands for the proposition that any fear resulting from threats must be reasonable.

{¶6} Appellant has not specifically addressed our standard of review in this appeal, but refers both to an abuse of discretion standard and a preponderance of the evidence standard.  We note that our standard of review of a protection order depends upon the challenge asserted by the appellant.  *Serdy v. Serdy*, 2013-Ohio-5532, ¶ 27 (7th Dist.).  "[W]hen the question on appeal is whether the trial court's decision to grant or deny a civil protection order — whether it is a domestic violence civil protection order or civil stalking protection order — our standard of review is whether there was sufficient, credible evidence to support a finding that the respondent engaged either in acts of

domestic violence or acts of menacing by stalking against the petitioner." *S.M. v. T.G.*, 2025-Ohio-1448, ¶ 26 (8th Dist.). In other words, if the appellant is challenging whether the decision is supported by a preponderance of the evidence, we review the weight of the evidence. *Serdy* at ¶ 28. The civil manifest weight of the evidence standard is the same as that used in criminal cases. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 13. Weight of the evidence concerns "the inclination of the greater amount of credible evidence" supporting one side over the other. *Eastley* at ¶ 12, 17, applying *State v. Thompkins*, 78 Ohio St.3d 380 (1997). "Weight is not a question of mathematics, but depends on its effect in inducing belief." *Eastley* at ¶ 12. A reversal on the weight of the evidence is ordered only in exceptional circumstances. *Thompkins*, 78 Ohio St.3d at 387.

**{¶7}** "The civil manifest weight of the evidence standard provides that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *Gaylord v. Frazzini*, 2010-Ohio-6385, ¶ 10 (7th Dist.), citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus. To reverse on the weight of the evidence, an appellate court must find that the trier of fact clearly lost its way in resolving conflicts in the evidence and that this resulted in a manifest miscarriage of justice. *Eastley* at ¶ 20.

**{¶8}** In weighing the evidence, a reviewing court must always be mindful that every reasonable presumption shall be made in favor of the finder of fact. *Id.* at ¶ 21, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 fn.3 (1984).

**{¶9}** On the other hand, we apply an abuse of discretion standard if the challenge concerns the scope of the protection order. *A.M. v. Leone*, 2025-Ohio-728, ¶ 61 (7th

Dist.); *Williams v. Hupp*, 2011-Ohio-3403, ¶ 21 (7th Dist.). We also apply an abuse of discretion standard when a trial court rules on objections to a magistrate's order or decision. "A trial court's ruling on objections to a magistrate's decision will not be reversed absent an abuse of discretion." *Radford v. Radford*, 2011-Ohio-6263, ¶ 14 (8th Dist.). "On appeal, an appellate court may reverse a trial court's modification [of a magistrate's decision] only if it finds the modification to be an abuse of discretion." *Donofrio v. Whitman*, 2010-Ohio-6406, ¶ 27-28 (7th Dist.). "The term 'abuse of discretion' means an error in judgment involving a decision that is unreasonable based upon the record; that the appellate court merely may have reached a different result is not enough." *Craig v. Athey*, 2025-Ohio-336, ¶ 22 (7th Dist.), citing *In re S.S.L.S.*, 2013-Ohio-3026, ¶ 22 (7th Dist.).

**{¶10}** In this appeal, Appellant does not challenge the scope of the protection order, but he does challenge the weight of the evidence as well as the trial court's decision to sustain Appellee's objections to the magistrate's decision and grant the DVCPO. Therefore, different standards of review will apply to his two arguments.

**{¶11}** Pursuant to R.C. 3113.31(C), a petition for a DVCPO must contain the following:

> (1) An allegation that the respondent engaged in domestic violence against a family or household member of the respondent or against a person with whom the respondent is or was in a dating relationship, including a description of the nature and extent of the domestic violence;

(2)  The relationship of the respondent to the petitioner, and to the victim if other than the petitioner;

(3)  If the petition is for protection of a person with whom the respondent is or was in a dating relationship, the facts upon which the court may conclude that a dating relationship existed between the person to be protected and the respondent;

(4)  A request for relief under [R.C. 3113.31].

{¶12}  "When granting a protection order, the trial court must find that petitioner has shown by a preponderance of the evidence that petitioner or petitioner's family or household members are in danger of domestic violence." *Felton v. Felton*, 79 Ohio St.3d 34 (1997), paragraph two of the syllabus.  R.C. 3113.31 does not rely on the definition of domestic violence contained in the criminal code, but rather, contains its own definition. R.C. 3113.31(A)(1)(a) defines domestic violence as "[t]he occurrence of one or more of the following acts against a family or household member" and then sets forth four types of domestic violence:

(i)  Attempting to cause or recklessly causing bodily injury;

(ii)  Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 or 2911.211 of the Revised Code;

Case No. 25 MA 0057

(iii)  Committing any act with respect to a child that would result in the child being an abused child, as defined in section 2151.031 of the Revised Code;

(iv)  Committing a sexually oriented offense.

**{¶13}**  The type of domestic violence alleged in this case falls under section (ii), placing another person by threat of force in fear of imminent serious physical harm.

**{¶14}**  "Threats of violence may constitute domestic violence pursuant to R.C. § 3113.31 if the fear resulting from those threats is reasonable."  *Anderson v. Anderson*, 2001-Ohio-3379, * 2 (7th Dist.).  The test for determining whether a petitioner has demonstrated a fear of imminent serious physical harm from the threat of force pursuant to R.C. 3113.31(A)(1)(a)(ii) involves both subjective and objective components.  *Fleckner v. Fleckner*, 2008-Ohio-4000, ¶ 23 (10th Dist.).  The subjective portion of the test "inquires whether the respondent's threat of force actually caused the petitioner to fear imminent serious physical harm," while the objective test "inquires whether the petitioner's fear is reasonable under the circumstances (that is, whether the respondent's threat would cause a reasonable person to fear imminent [unconditional, non-contingent] serious physical harm)."  (Bracketed comments in original.)  *Id.*  Appellant is primarily challenging whether the evidence supported the objective aspect of the test, although he also raises a question as to whether the evidence demonstrates that Appellee was actually or subjectively afraid of Appellant.

**{¶15}**  As the trial court noted in its judgment entry, the word "threat" in this context may refer to many types of conduct, not just verbal threats.  "[S]tatements, conduct, and

actions, taken with all surrounding facts and circumstances, can constitute a threat." *S.E. v. D.I.*, 2024-Ohio-1390, ¶ 17 (2d Dist.).

**{¶16}** A hearing on the DVCPO was held before a magistrate on March 14, 2025. The evidence presented at the hearing revealed that on January 30, 2025, Appellee told Appellant that she had talked with an attorney and was contemplating filing for divorce or dissolution. Appellant and Appellee agreed to talk about it the next day. However, during their encounter Appellant became visibly upset and started crying dramatically. After Appellee went upstairs to bed, she heard Appellant rummaging in the office next to the bedroom, where Appellant kept a gun. She heard Appellant walk downstairs and leave the house. Appellee entered the office area and saw the open gun case where Appellant's gun had been stored. Appellee saw that the gun was not in its case. She believed Appellant had gone outside carrying both the firearm and ammunition. (3/14/25 Tr., p. 54.) At about this time, Appellee sent a text message to Appellant to inquire about this behavior. Appellant responded: "don't let them forget how much I love them." (3/14/25 Tr., p. 50.) Appellee believed that based on some of Appellant's past behavior, Appellant was referring to their children and that he was contemplating suicide.

**{¶17}** Concerned, Appellee went outside to look for Appellant. When she found Appellant sitting on the steps of their shed holding his hand behind his back, she asked what he was doing. He said he was "thinking about something stupid." (3/14/25 Tr., p. 49.) She told him he was scaring her and asked him to please put down the gun. Appellant responded by asking Appellee to come closer to him and take something from him. As she believed he held a loaded gun, she did not want to move any closer to him. At some point, Appellant began walking toward Appellee with the gun behind his back.

Eventually, Appellant did comply with her request and put the gun down inside his garage. Appellee testified that on the night of the incident, she did not want to be in close proximity to Appellant, who was unstable, crying, and holding a gun behind his back.

{¶18} Jacquelyn Chiclowe, Appellant's mental health counselor, testified at the magistrate's hearing. She testified about the suicidal thoughts Appellant was experiencing in general in 2023. (3/14/25 Tr., p. 17, 18.) She testified that several hours after the January 30th incident, she spoke with Appellee. Appellee told her that Appellant had been distraught and was crying, took his firearm from their house, and that she found him sitting outside with the firearm. Appellee told her that she was frightened by Appellant's behavior. (3/14/25 Tr., p. 30.) Although at oral argument Appellant's counsel suggested that Appellee actually told Chiclowe that she was not afraid, Chiclowe very clearly testified as to what Appellee had told her:

> Q. Now, you summarized it that she was scared and worried. What exactly did she say to you?

> A. I'm scared and worried.

(3/14/25 Tr., p. 15.)

> Q. And isn't it accurate that . . . his wife told you that she wasn't afraid of him . . . .

> A. She did say she was afraid . . . .

(3/14/25 Tr., p. 30.)


Case No. 25 MA 0057

{¶19} Appellee herself testified that she was terrified of Appellant on the night of January 30, 2025, that she had been afraid of him in the past, and is still terrified by him. (3/14/25 Tr., pp. 57-58.) She told her attorney that she had not felt safe in her marriage for the past year-and-a-half. (3/14/25 Tr., p. 51.) She testified that she continued to be afraid of Appellant. (3/14/25 Tr., p. 123.)

{¶20} Appellant testified that he was very upset because Appellee wanted a divorce and because she and the children might move away. He felt hopeless and was in despair that evening. (3/14/25 Tr., p. 136.) He testified that he was under a great deal of stress, partly because he had been accused of sexual harassment at work. (3/14/25 Tr., pp. 131, 133.) He said that he was taking medication to treat depression. (3/14/25 Tr., p. 132.)

{¶21} Appellant testified that on the night in question he took a gun and a magazine of bullets with him and went outside. (3/14/25 Tr., p., 138.) Appellee came looking for him, and when she arrived he was holding the gun behind his back. (3/14/25 Tr., p. 139.) He admitted he was thinking of doing "something stupid." (3/14/25 Tr., p. 140.) He asked Appellee to come closer to him and physically take the gun from him. (3/14/25 Tr., p. 139.) He also testified that he had no idea what he would have done if she had tried to take the gun that night. (3/14/25 Tr., p. 141.)

{¶22} There is no doubt that Appellee was subjectively afraid of Appellant, and she stated that she was in fear multiple times, both in court and to Appellant's counselor. It is also apparent that any reasonable person would have been in fear during the incident, based on the evidence presented. Appellee's fear was reasonable based on a number of facts: Appellant's past behavior; the comments he made on the night of January 30,

2025; Appellant's distraught reaction to the news that Appellee was thinking of divorce; Appellant's retrieval of a gun and bullets which he took with him when he went outside of the house; Appellant's statement that he was going to do something stupid; and that Appellant clearly evinced he was feeling upset, hopeless, and in despair. Also, Appellant was holding and hiding the (apparently loaded) gun behind his back when Appellee arrived outside to check on him and acted in an odd manner by asking Appellee to take the gun away from him rather than simply putting down the weapon.

{¶23} Appellant contends that Appellee stated she was not threatened by him, and therefore, there was insufficient evidence to support the DVCPO. Although Jacquelyn Chiclowe did testify that Appellee told her Appellant made no threats, she clarified her testimony by saying that Appellant had made no "verbal threats." (3/14/25 Tr., p. 30.) We noted earlier that threats may be verbal or nonverbal. Appellee testified multiple times that she felt threatened by the gun itself and by the way Appellant was presenting himself with the gun. (3/14/25 Tr., pp. 63, 113, 118, 119). She also believed the gun was loaded, and Appellant himself admitted that he had both a gun and its ammunition in his possession that night.

{¶24} Appellant contends that the fact that Appellee came downstairs and went outside to look for him, knowing he had a gun, shows she was not afraid of him and that it was not reasonable for the trial court to conclude she was afraid of him. This contention is certainly not the only interpretation of these facts, or even the most logical. Two things can be true at the same time regarding Appellee's fear. Appellee could have been afraid that her husband was going to commit suicide or hurt himself, and she also could have been afraid for her own safety and the safety of her children. The fact that she appears

to have had the courage to find her husband and try to stop him from using the gun on himself (or at all) did not mean she had no fear he would use it against her.

**{¶25}** Appellant's other argument on appeal is that the trial court should simply have accepted the magistrate's decision that denied the petition for DVCPO. Appellant offers no legal reason why he believes the trial judge erred by sustaining Appellee's objections to the magistrate's decision. Pursuant to Civ.R. 65.1(F)(3)(c) governing civil protection orders, a magistrate's order is not effective unless adopted by the court. A court may only adopt the order after it reviews the order, and a court may instead modify or reject the order. If objections are filed, the court is empowered to review those objections. Civ.R. 65.1(F)(3)(d). In the trial court's final judgment of May 20, 2025 the court bases its rejection of the magistrate's denial of the DVCPO on Civ.R. 65.1.

**{¶26}** In this case, the trial court judge held a hearing on Appellee's objections, conducted a full review of the transcripts of the magistrate's hearing, and independently determined that the DVCPO should be granted. The court cited to the evidence discussed above, and the weight of this evidence fully supports the decision to grant the DVCPO. The court explained its reasons for overturning the magistrate's decision. There is nothing to suggest any abuse of discretion in the court's judgment when it sustained Appellee's objections to the magistrate's decision and decided the DVCPO must be granted.

**{¶27}** Appellant's two assignments of error are without merit and are overruled.

### Conclusion

**{¶28}** Appellant raises two arguments on appeal. Appellant argues that the preponderance of evidence did not support granting a DVCPO. Appellant contends that

Appellee was not afraid of Appellant on January 30, 2025 and that it would not have been reasonable for her to be afraid. We disagree. There was substantial evidence showing that Appellee was in fear of Appellant and that her fear was reasonable. Appellee stated a number of times that she was afraid. The evidence showed that Appellant was distraught over the possibility of divorce, took a gun and bullets from his office, held the gun behind his back as Appellee approached him, and told Appellee to take it from him instead of simply putting it down. He testified about his thoughts of despair and hopelessness, and he said he was going to do something stupid that night. The manifest weight of the evidence supports the trial court's judgment. In addition, Appellant argues that the trial court should not have sustained Appellee's objections and reversed the magistrate's decision. The record shows that the court conducted an independent review of the evidence as required by Civ.R. 53, and fully supported its judgment with citations to the record and clear reasoning. The court did not commit an abuse of discretion in sustaining Appellee's objections to the magistrate's decision. Appellant's assignments of error are without merit, and the judgment of the trial court is affirmed.

Robb, J. concurs.

Dickey, J. concurs.

Case No. 25 MA 0057

———————————————

For the reasons stated in the Opinion rendered herein, Appellant's assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Domestic Relations Division, of Mahoning County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**